**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

JOVAN WEBB,

        Plaintiff,

vs.

CITY OF WATERLOO, et al.,

        Defendants.

No. 17-CV-2001-CJW-MAR

**MEMORANDUM OPINION
AND ORDER**

---

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................ 1

II.   FACTUAL FINDINGS ..................................................................... 1

    A.    Police Response to Report of Fight ............................................. 1

    B.    Officer Nissen's Initial Confrontation with Plaintiff ......................... 3

    C.    Officers' Confrontation with Plaintiff at the Parking Lot Exit ............. 3

    D.    Discharge of Firearms............................................................. 4

    E.    Officer Frein's Discharge of his Firearm ...................................... 6

    F.    Surveillance and Police Car Video............................................. 6

    G.    Plaintiff's Flight from the Scene and Subsequent Arrest .................... 7

    H.    Plaintiff's Prosecution and Convictions ...................................... 7

I.  City of Waterloo Policy and Procedures ......................................... 8

III. PLAINTIFF'S CLAIMS ...................................................................... 9

IV. SUMMARY JUDGMENT STANDARD ............................................10

V.  DISCUSSION ......................................................................................13

  A.  Count I: Section 1983 Claim for Excessive Use of Force...................13

    1.  Officer Nissen .........................................................17

    2.  Officer Frein..............................................................21

  B.  Count II: Section 1983 Claim for Equal Protection Violation ..............22

    1.  Officer Nissen .........................................................24

    2.  Officer Frein..............................................................25

  C.  Application of the *Heck* Doctrine...............................................26

  D.  Application of Res Judicata and Collateral Estoppel Doctrines ............31

  E.  Count III: Section 1983 Claim for Failure to Intervene .....................35

  F.  Count IV: State Law Battery Claim..............................................36

    1.  Officer Nissen .........................................................36

    2.  Officer Frein..............................................................37

  G.  Claims Against the City .........................................................37

    1.  Section 1983 Claim.......................................................37

a.      Failure to Supervise Basis for Liability ........................39

b.      Failure to Train Basis for Liability ............................42

2.      City Liability on the Battery Claim .....................................45

VI.    CONCLUSION ................................................................................46

# I.    INTRODUCTION

This matter is before the Court on defendants' Motions for Summary Judgment. Defendants City of Waterloo (the "City") and Officer Mark Nissen ("Officer Nissen") filed a Motion for Summary Judgment (Doc. 69), as did defendant Officer Thomas Frein ("Officer Frein") (Doc. 70).  After obtaining an extension of time, plaintiff filed a timely brief in resistance to both Motions for Summary Judgment.  (Doc. 84).  Plaintiff also filed a response to defendants' statements of material facts (Docs. 80-1 & 80-2), and his own statement of material facts (Doc. 80).   After obtaining an extension of time, defendants filed a timely joint reply to plaintiff's statement of additional material facts (Doc. 91), defendants City of Waterloo and Nissen filed a brief in reply to plaintiff's resistance (Doc. 92) and defendant Frein also filed a brief in reply to plaintiff's resistance (Doc. 94).  For the reasons that follow, the Court **grants in part**, and **denies in part**, defendants' Motions for Summary Judgment.

# II.    FACTUAL FINDINGS[1]

## A.    Police Response to Report of Fight

On April 5, 2015, at approximately 1:27 a.m., Waterloo police officers were dispatched to the New World Lounge on a report of a fight involving approximately 40 people.  Officers had been called to the New World Lounge many times in the past for fights, weapons, and narcotics.  On this occasion, multiple units responded to the call, including Officers Nissen and Frein, who were members of the Waterloo Police Department's Violent Crimes Apprehension Team.   Officers Nissen and Frein were together in an unmarked police car.  Officer Nissen was in plain clothes, wearing a fleece

---

[1] The Court's factual findings are based upon the statements of fact admitted by the opposing party or parties, as well as statements of fact that were denied, but the record, viewed in the light most favorable to plaintiff, does not support the denial.  The Court also notes the parties' positions on certain disputed issues of fact.

pullover jacket. Officer Nissen claims his badge was clipped to the top of his jacket in full view; plaintiff denies that Officer Nissen's badge was visible. Officer Nissen was also wearing a holster and handgun, handcuffs, a radio, and a flashlight. Officer Frein was in full police uniform.

While the officers were enroute, the dispatcher reported another call of a possible shot being fired in the air by someone in a white SUV as the vehicle was leaving the area. When Officers Nissen and Frein arrived at the parking lot of the New World Lounge, Officer Nissen activated his lights and siren to disperse the crowd. Officer Nissen parked the patrol car in the southeast corner of the parking lot. A large group of people were congregated in the parking lot and in the parking lot of a nearby convenience store located to the south of the New World Lounge. Other officers were present, walking through the area trying to get the people to disperse.

Officers Nissen and Frein got out of their car and observed a dispute among some individuals in the convenience store parking lot. Both officers walked toward the convenience store parking lot, but the dispute ended, and those parties dispersed.

There were still many people in the New World Lounge parking lot, but most were slowly dispersing; a few were yelling. Officer Nissen crossed the street from the convenience store and began walking west. As Officer Nissen was walking he observed a white car backed into a parking space in the New World Lounge parking lot. Plaintiff Jovan Webb was the sole occupant of the car and was seated in the driver's seat. Plaintiff had not been involved in the altercation at the bar and had just left the lounge, walked to his car, and got into the driver's seat. The car windows were rolled up. Officer Nissen states that he observed plaintiff put what Officer Nissen believed to be a liquor bottle up to plaintiff's mouth, then screw the cap back on and place the bottle behind the driver's seat. Plaintiff states that he did not have a bottle at or near his mouth while seated in his car. Officer Nissen did not see plaintiff stumble, slur his speech, or commit a traffic

violation. A liquor bottle was later found in plaintiff's car. Officer Nissen could see that plaintiff was a black man.

### B.    Officer Nissen's Initial Confrontation with Plaintiff

Officer Nissen approached plaintiff's car on the driver's side and shined his flashlight into the backseat. Officer Nissen observed what he believed to be a liquor bottle leaning up against the rear passenger door. Officer Nissen knocked or pounded on the driver's side window and may have identified himself as a police officer. Plaintiff saw Officer Nissen, but states that he did not hear Officer Nissen identify himself as a police officer and did not see Officer Nissen's badge. No audio recordings captured Officer Nissen identifying himself as a police officer.

Plaintiff began to drive away. Plaintiff drove east across the parking lot toward the Broadway Street exit from the lot. Plaintiff did not drive at a high rate of speed across the parking lot, nor did he drive slowly. Officer Nissen ran after plaintiff's car, yelling "Hey police!" Officer Nissen also called out on his radio: "Hey get this car, this white car's taking off on me right here." Another officer, Randy Girsch, called out plaintiff's license plate number. Plaintiff admits, based on the recorded audio, that Officer Nissen yelled "Hey Police!" but denies that he heard Officer Nissen at the time.

### C.    Officers' Confrontation with Plaintiff at the Parking Lot Exit

Officer Steven Bose heard Officer Nissen's radio call to stop plaintiff's vehicle. Officer Bose was crossing the New World Lounge parking lot at the time. Officer Bose initially believed Nissen was calling from the convenience store parking lot, but then saw plaintiff's car coming at him and saw Officer Nissen running behind plaintiff's car. Officer Bose estimated plaintiff was driving approximately 15 to 20 miles-per-hour.

Officer Bose was in full police uniform. Officer Bose testified in a deposition that he faced plaintiff's car, raised a hand, and yelled for plaintiff to stop. Plaintiff recognized Officer Bose was a police officer. Plaintiff denies seeing Bose raise his hand or hearing

Officer Bose telling plaintiff to stop. Plaintiff nevertheless stopped his car in front of Officer Bose, who was positioned between plaintiff's driver's side headlight and the center of the car hood. The car was stopped for a second or two.

Officer Nissen then caught up with plaintiff's car on the passenger side and started pounding on the passenger side window so hard that his hand hurt. Officer Nissen also tried to open the door. Officer Nissen states that he yelled for plaintiff to stop; plaintiff states that he did not hear any such command.

Defendants assert that Plaintiff let his foot off the brake and moved the car forward, bumping into the legs of Officer Bose three to four times as Officer Bose continued to back up. Defendants assert that plaintiff's car was moving slowly and did not cause injury to Officer Bose's legs when it bumped him. Officer Bose testified that he yelled "hey" a couple of times and yelled for plaintiff to stop his car. Officer Bose placed his left hand on the hood of the car and had his pepper spray in his right hand. Officer Bose also moved more toward the driver's side of the car. Plaintiff denies bumping into Officer Bose and denies hearing Officer Bose say "hey" or tell plaintiff to stop.

Both Officers Bose and Nissen state that they saw plaintiff reach down toward his right thigh or the center console of his car; plaintiff denies that he did so. Officer Nissen moved toward the front passenger side of plaintiff's car and drew his firearm. Officer Bose testified that he tried to pull his own weapon, but had the pepper spray can in his right hand and fear prevented him from dropping the can to grab his weapon. Defendants state that plaintiff put one or both hands back on the steering wheel; plaintiff denies ever having taken his hands off the steering wheel.

### D. *Discharge of Firearms*

Officer Nissen states that at this point plaintiff accelerated, plaintiff's car moved forward, Officer Bose went out of sight, and Officer Nissen began to shoot at defendant

fearing that Officer Bose was being run over. Officer Nissen fired four shots into the windshield of plaintiff's car. Plaintiff was hit in his arm, chest, and abdomen by Officer Nissen's bullets. Plaintiff states that he was at a complete stop when Officer Nissen began to fire his weapon at plaintiff and it was only then that plaintiff accelerated to avoid being shot. Plaintiff asserts that Officer Nissen could see Officer Bose on his feet when Officer Nissen opened fire. The portion of the record plaintiff cites only states that, after watching the video of the incident, Officer Nissen is now aware that Officer Bose was on his feet at the time Officer Nissen opened fire.

Officer Frein testified that he saw plaintiff accelerate and, he believed, knock Officer Bose down, and then Officer Frein heard Officer Nissen discharge his firearm. Officer Bose states that he dove out of the way to avoid being run over. Officer Bose heard the first gunshot after he began to dive out of the way of plaintiff's car. Officer Bose did not scream or yell that he was being hit or injured and, in fact, was able to dive out of the way of plaintiff's car. Officer Bose had a small abrasion on his knee and a stiff shoulder. The parties dispute whether the injuries were the result of Officer Bose getting out of the way of plaintiff's car or falling down after the shooting occurred.

Other witnesses have provided conflicting testimony about the timing of the events. Lonnisha Dixon, Brittany Brooks, and Deshay Grover, all bystanders,[2] testified that Officer Nissen's shots occurred before plaintiff sped off. John Wayne Phillips, owner of the New World Lounge, stated that plaintiff hit Officer Bose with plaintiff's car and sped away and "police officers fired on the vehicle." (Doc. 69-3, at 17-18). Officer John Heuer saw Officer Bose in front of plaintiff's stopped car. Officer Heuer then ran behind plaintiff's car toward Officer Heuer's own police vehicle when he heard the shots.

---

[2] Lonnisha Dixon was plaintiff's on-again-off-again girlfriend at the time she was interviewed, and the two have a child together.

5

Officer Heuer did not see Officer Nissen shooting at plaintiff's car, but then saw plaintiff's car leave the parking lot.

A forensic examination of the bullet holes in the windshield by plaintiff's expert shows them to be close together and at an angle that, in his opinion, is inconsistent with the car being in motion at the time Officer Nissen fired through the windshield. (Doc. 80-16, at 10-11).

### E.    Officer Frein's Discharge of his Firearm

Officer Frein was crossing Riehl Street and headed to the New World Lounge parking lot when he overheard Officer Nissen's call on the radio to stop plaintiff's car. Officer Frein went to the Riehl Street entrance to the parking lot. Officer Frein was behind and to the south of plaintiff's car as Officer Bose got in front of plaintiff's car. Officer Frein observed plaintiff repeatedly breaking and then moving his car forward. Officer Frein then heard plaintiff's car "rev" and saw Officer Bose go down. Officer Frein saw Officer Bose go out of sight as Officer Nissen fired his weapon at plaintiff's car. Officer Frein ran up behind plaintiff's car as it turned into the street. Officer Bose was to the left and behind Officer Frein at this point. Plaintiff disputes the accuracy of Officer Frein's version of events in light of the video evidence.

Officer Frein then fired three shots at plaintiff's car. Two missed his car and one penetrated the trunk of plaintiff's car and came to rest in its front dashboard. Plaintiff was unaware that Officer Frein shot at his car. Plaintiff did not stop and continued to drive away.

### F.    Surveillance and Police Car Video

The New World Lounge had a video surveillance camera pointed toward the parking lot exit where the shooting occurred. Copies were provided to the Court as part of the summary judgment record, along with still shots from the video. The video does not have any sound. The Court could not determine from viewing the video when Officer

Nissen began to discharge his weapon in relation to when plaintiff began to move his vehicle or when Officer Bose moved out of the way. Plaintiff's expert likewise could not "determine exactly when Officer Nissen opened fire on" plaintiff's car, "nor where Officer Nissen and Sergeant Bose were standing." (Doc. 80-16, at 9).

Officer Girsch's police car was parked on the grass median between Broadway and the sidewalk, facing southbound on Broadway. His car was equipped with a dashboard camera. Although Officer Girsch's dashboard camera has sound, the camera was not pointed in the direction of the shooting. Four shots can be heard in rapid succession, and then plaintiff's car comes into view as it exits the parking lot onto Broadway. The video then shows Officer Bose standing and moving from the parking lot toward the street. The video shows Officer Frein firing three shots in rapid succession at plaintiff's car and it drives off down Broadway.

### G. *Plaintiff's Flight from the Scene and Subsequent Arrest*

Plaintiff drove himself to Allen Hospital. Officers John Koontz and Marc Jasper encountered plaintiff in the hospital parking lot, arrested him, and brought him into the hospital. Plaintiff was treated in the emergency room and then admitted to the hospital to treat his gunshot wounds.

### H. *Plaintiff's Prosecution and Convictions*

Plaintiff was charged with three crimes in connection with the incident. During the criminal proceedings, plaintiff filed a motion to dismiss the case and to suppress evidence. On January 18, 2018, the court issued an order finding that plaintiff struck Officer Bose at least two or three times on Officer Bose's legs with plaintiff's car. The court concluded this constituted an assault on a law enforcement officer in the performance of his duties. The court further concluded that Officer Nissen fired at plaintiff when plaintiff started to accelerate his car and Officer Bose dove out of the way.

On September 20, 2018, plaintiff entered an Alford plea to the charge of serious misdemeanor assault on a peace officer, in violation of Iowa Code Section 708.3A(4), simple misdemeanor interference with official acts, in violation of Iowa Code Section 719.1(1)(a), and carrying weapons, in violation of Iowa Code Section 724.4(1). The factual basis for plaintiff's plea to the assault charge was the contact between plaintiff's car and Officer Bose. The factual basis for plaintiff's plea to the interference charge was plaintiff pulling out of the parking space and driving away after being engaged by Officer Nissen. The state court incorporated the trial information, including minutes of testimony, depositions, and in-court testimony at the hearings in the state criminal court action as an additional factual basis for plaintiff's guilty pleas.

## I.    *City of Waterloo Policy and Procedures*

Waterloo Police Chief Daniel Trelka is the final policy maker for the Waterloo Police Department, including its policy on use of force. He also has the authority to hire and fire officers. In a September 2016 newspaper editorial (published more than a year after the incident giving rise to this law suit), Chief Trelka was allegedly quoted as saying that his officers sometimes made "honest mistakes" that do not warrant discipline. Officer Nissen became aware of that quote.

Between 2011 to 2015, nine citizens filed complaints against Officer Nissen for excessive use of force, and there were 17 other allegations of misconduct by Officer Nissen. Officer Nissen was exonerated of almost all of the allegations. Officer Nissen was sued on three prior occasions for excessive use of force; the suits were settled out of court.

The Waterloo Police Department has a written policy to investigate all citizen complaints. Waterloo Police Department Policy does not require supervisors to consider citizen complaints in evaluating officers. The Waterloo Police Department does not have a policy to flag an officer who is receiving an inordinate number of citizen complaints.

When the Waterloo Police Department receives a complaint about excessive use of force, either Internal Affairs or a supervisory officer investigates the complaint. Of 86 excessive use of force complaints from 2007 to 2014, three were sustained.

Between 2012 and 2017, the Waterloo Police Department had five police shootings. A shooting review board, consisting of Waterloo Police Department officers, is tasked with determining whether a shooting was in accordance with department policies. The board relies on an investigation by the Internal Affairs department. Internal Affairs waits to conduct its investigation until after the Iowa Division of Criminal Investigation conducts its investigation of any police shooting. The board did not find any of the shootings between 2012 and 2017 to be unjustified.

The Waterloo Police Department has a policy that when more than one officer is involved in a "critical incident," that they be transported to the police station in separate vehicles when possible and that they are advised not to discuss the incident until a formal investigation takes place. On this occasion, Officers Nissen and Frein were transported to the police station in the same vehicle. Neither Officer Nissen or Officer Frein was disciplined for conduct arising from the April 5, 2015, incident with plaintiff.

### III.    PLAINTIFF'S CLAIMS

Plaintiff brought a six-count complaint in this Court. (Doc. 2). Count I asserts an excessive use of force claim against Officers Nissen and Frein, and against the City, under Title 42, United States Code, Section 1983. Count II asserts an equal protection claim against "defendants," including the City, claiming defendants intentionally subjected him to unlawful treatment based on his race, and is brought under Title 42, United States Code, Section 1983. Count III asserts a failure to intervene claim against unknown Waterloo police officers, and is brought under Title 42, United States Code, Section 1983. Count IV asserts a state law claim of battery against Officers Nissen and Frein. Count V asserts a respondeat superior claim against the City for all prior counts.

Count VI asserts an indemnification claim against the City for the conduct of Officers Nissen and Frein.

### IV.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." *Id.* at 56(c)(1)(A); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).  More specifically, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *Id.* at 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law . . .." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of fact genuine.  In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" such that it

"require[s] a jury or judge to resolve the parties' differing versions of the truth at trial."
*Id.* at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citation omitted). "The movant is not required by the rules to support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (citation omitted). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Matsushita*, 475 U.S. at 587-88 (citation omitted); *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them" (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Although the Court must draw all inferences in favor of the nonmoving party, the Court cannot rely on "mere speculation, conjecture, or fantasy" to deny a motion for summary judgment. *Moody v. St. Charles Cty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (internal quotation marks and citations omitted). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). "Rather, the court's function is to determine whether a dispute about a material

fact is genuine . . . ."  *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996) (citation omitted).

Government officials are entitled to qualified immunity from suit under Section 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted).  Whether to afford a defendant qualified immunity, therefore, consists of two separate prongs: "whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right," and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted).  In assessing whether a government official is entitled to qualified immunity, the lower courts are vested with discretion in determining which prong to address first.  *Id.* at 236.

When a motion for summary judgment on a Section 1983 claim rests on the assertion of qualified immunity, summary judgment is appropriate only if the Court finds 1) there are no genuine issues of material fact that would counter the qualified immunity defense, and 2) summary judgment on the issue of qualified immunity is proper as a matter of law.  *Johnson v. Jones*, 515 U.S. 304, 313-14 (1995) (suggesting that, had the movant been entitled to summary judgment as a matter of law, summary judgment on the qualified immunity defense would have been proper in the absence of a genuine issue of material fact).  Thus, it can be said that when the defense of qualified immunity is raised, the movant need not prove the absence of any material fact, but need only prove the absence of any material fact relating to the defense of qualified immunity.  In keeping with the traditional summary judgment standard, all inferences of fact must be drawn in favor of the non-moving party.  *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008).

## V.    DISCUSSION

The Court will address plaintiff's claims count by count and within the discussion, when appropriate, separately address the propriety of summary judgment for Officers Nissen and Frein.  In part A, the Court addresses plaintiff's excessive use of force claim.  In part B, the Court addresses plaintiff's equal protection claim.  In Part C, the Court addresses whether the *Heck* doctrine bars plaintiff's claims against the officers.  In part D, the Court addresses whether the res judicata or collateral estoppel doctrines bar plaintiff's claims against the officers.  In Part E, the Court sua sponte addresses plaintiff's claim against "unknown" officers for failure to intervene.  In Part F, the Court addresses plaintiff's state law battery claim against the officers. In the final section, the Court addresses the liability of the City of Waterloo under all counts.

### A.    *Count I: Section 1983 Claim for Excessive Use of Force*

In Count I of his complaint, plaintiff asserts claims under Title 42, United States Code, Section 1983, which recognizes violations of federal statutory or constitutional law "committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).  "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 50 (citations omitted).  Section 1983 does not provide a means by which a plaintiff can seek redress for violations of state law. *See Baker v. McCollan*, 443 U.S. 137, 146 (1979).

"Standing alone, [S]ection 1983 does not establish any substantive rights.  Rather, it simply serves as a vehicle for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Henley v. Brown*, 686 F.3d 634, 640 (8th Cir. 2012) (citations and internal quotation marks omitted).  Neither in his complaint, nor in his brief in resistance to defendants' Motions for Summary Judgment, does plaintiff specifically identify a federal statute or the specific

constitutional provision he claims defendants violated by their alleged use of excessive force. The case law makes it clear, however, that claims of excessive force in the context of officers shooting a person while effectuating a stop or arrest, are analyzed under the Fourth Amendment to the United States Constitution.[3]

The Fourth Amendment's prohibition against unreasonable searches and seizures includes the right to be free from law enforcement officers using excessive force in effectuating an arrest. *Graham*, 490 U.S. at 396; *Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002). "Police officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a lawful seizure . . . ." *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011) (citation omitted); *see also Johnson v. Carroll*, 658 F.3d 819, 825 (8th Cir. 2011) ("Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.") (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009)). "[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Brown*, 574 F.3d at 499.

---

[3] Officer Frein moved for summary judgment on plaintiff's excessive force claim whether plaintiff's claim is based on the Fourth, Eighth, or Fourteenth Amendment to the United States Constitution. (Doc. 72, at 12-27). Officer Nissen and the City assert that the Fourth Amendment is the applicable constitutional standard for plaintiff's excessive force claim. (Doc. 69-1, at 13). The United States Supreme Court has made clear that "a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). In his resistance plaintiff does not allege or argue that Count I is based on an alleged violation of his rights under the Eighth or Fourteenth Amendments. Plaintiff has thus waived any claim under those provisions. *See, e.g.*, *Satcher v. Univ. of Ark. at Pine Bluff Bd. Of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006) (quoting *Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir. 2004) (internal quotation marks omitted). Courts evaluate the reasonableness of an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. This is because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397; *see also Grider v. Bowling*, 785 F.3d 1248, 1252 (8th Cir. 2015) ("The dispositive question is whether the officer's conduct was objectively reasonable under the circumstances, as judged from the perspective of a reasonable officer on the scene at the time the force was applied.") (citation omitted).

The reasonableness inquiry is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation" *Graham*, 490 U.S. at 397; *see also Peterson v. Kopp*, 754 F.3d 594, 600 (8th Cir. 2014) ("An officer's use of force will violate the Fourth Amendment if it is not 'objectively reasonable.'") (quoting *Graham*, 490 U.S. at 397). In conducting this analysis, a court must consider the totality of the circumstances. *Cook v. City of Bella Villa*, 582 F.3d 840, 849 (8th Cir. 2009). Circumstances relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see also Schoettle v. Jefferson Cty.*, 788 F.3d 855, 859 (8th Cir. 2015) ("When determining whether unreasonable force was used, courts must give 'careful attention to the facts and circumstances of each particular

case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" (quoting *Graham*, 490 U.S. at 396)).

The degree of injury suffered by the plaintiff "is certainly relevant insofar as it tends to show the amount and type of force used." *Chambers*, 641 F.3d at 906. A causal connection between an event and an injury may be inferred in cases in which a visible injury or a sudden onset of an injury occurs. *Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002) (internal quotation marks and citation omitted). "The degree of injury should not be dispositive, [however,] because the nature of the force applied cannot be correlated perfectly with the type of injury inflicted." *Chambers*, 641 F.3d at 906. Rather, the analysis focuses "on whether *the force applied* is reasonable from the perspective of a reasonable officer on the scene at the time the force is used." *Id.*

A seizure by shooting is objectively reasonable when the officer using the force has probable cause to believe that the subject poses a significant threat of death or serious physical injury to the officer or others. *Tennessee v. Garner*, 471 U.S. 1, 3, 11 (1985); *Gardner v. Buerger*, 82 F.3d 248, 252 (8th Cir. 1996). When, as here, a case involves a police shooting, "[t]erms like 'seizure' and 'intrusive governmental conduct,' cannot capture the facts of [the] case; it is an unavoidable understatement to observe that the shooting was a seizure." *Gardner*, 82 F.3d at 251 (internal citations omitted). "But even if the translation is imperfect, [courts] use the Fourth Amendment's objective-reasonableness standard to analyze excessive-force claims." *Id.* In assessing the reasonableness of an officer's conduct, it is important that courts not "indulge in armchair quarterbacking or exploit the benefits of hindsight when evaluating police officers' use of deadly force." *Id.*

> It may appear, in the calm aftermath, that an officer could have taken a different course, but we do not hold the police to such a demanding standard. Police officers have tough jobs, and the calculus of

reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving . . . .

*Id.* at 251-52 (internal citations and quotation marks omitted).

### 1. *Officer Nissen*

Summary judgment is **denied** as to the excessive use of force claim against Officer Nissen because there exists a genuine issue of material fact about whether plaintiff's car was completely stopped or was moving toward Officer Bose, at the time that Officer Nissen opened fire on plaintiff. Neither videotapes nor testimony clearly establish whether plaintiff's car was moving forward into Officer Bose at the time Officer Nissen shot plaintiff. The answer to that question, which only a jury can decide, is dispositive as to plaintiff's excessive use of force claim against Officer Nissen.

Each side insists that the videotape recordings show their side of the story, but the Court finds, as did plaintiff's forensic examiner and the state court judge, that the video recordings are inconclusive. The surveillance video from the New World Lounge shows the incident, from a distance, but lacks sound. Muzzle flashes from Officer Nissen's handgun are not visible. The video from Officer Girsch's dash board camera does not show the shooting itself, but it does capture the sound of the gunshots and the immediate aftermath of the shooting. The Court has repeatedly reviewed the videotapes and the still images from the videotapes and finds that there is a genuine issue of material fact whether plaintiff's car was moving into Officer Bose when Officer Nissen shot plaintiff.

The parties have also proffered conflicting testimony about whether plaintiff's car was moving at the time of the shooting. Officers Nissen, Frein, and Bose insist that plaintiff's car accelerated into Officer Bose before Officer Nissen opened fire on plaintiff. Plaintiff, his girlfriend, and two other bystanders insist that plaintiff's car was at a complete stop when Officer Nissen shot plaintiff and only moved forward afterwards.

Officer Heuer's testimony could be interpreted to support either version. Officer Heuer testified that plaintiff's car was stopped, he ran behind it toward his police car, and then he heard the gunshots; he was not looking at Officer Nissen and plaintiff's car at the time. Officer Heuer cannot say whether the car was moving forward or was stopped at the precise moment of the gunfire. Likewise, the statement provided by the owner of the New World Lounge, John Phillips, is inconclusive. The sequence of his words might suggest that plaintiff began to run over Officer Bose before Officer Nissen opened fire, but his statement was imprecise and is left vague as to the order of events.

Whether plaintiff's car was driving forward into Officer Bose, or was at a complete stop, is material to determining whether Officer Nissen used excessive force. *See McCaslin v. Wilkins*, 183 F.3d 775, 779 (8th Cir. 1999) (finding that the existence of a genuine issue of material fact whether the plaintiff continued to pose a threat to officers at the time he was shot precluded a grant of summary judgment). If plaintiff accelerated his car toward or into Officer Bose before Officer Nissen opened fire, then Officer Nissen's use of deadly force could have, and likely would have, been justified. *See McCullough v. Antolini*, 559 F.3d 1201, 1208 (11th Cir. 2009) ("[Plaintiff] used his vehicle in a dangerous and aggressive manner which provided the officers with probable cause to believe that [plaintiff], while driving his truck, posed a threat of serious physical harm or death to the officers.").

In any event, if plaintiff's vehicle was moving at the time of the shooting Officer Nissen's use of deadly force would not have violated a clearly established statutory or constitutional right of which a reasonable person would have known and, thus, Officer Nissen would be entitled to qualified immunity. Under the stressful circumstances facing Officer Nissen, a reasonable officer would not have clearly known that it was unconstitutional to use deadly force when a suspect is driving his car, a deadly weapon, into a fellow officer. *See United States v. Yates*, 304 F.3d 818, 823 (8th Cir. 2002) ("A

car or truck may be used as a deadly or dangerous weapon."). This is true even if Officer Nissen was factually mistaken that Officer Bose had been run over or was being dragged by plaintiff's car. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make . . . judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97; *see also Pearson*, 555 U.S. at 231 ("The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." (citation and internal quotation marks omitted)).

Conversely, if plaintiff was at a complete stop at the time that Officer Nissen opened fire, then a reasonable officer should have known that it was unconstitutional to use deadly force, even if Officer Nissen believed that plaintiff had, and may again, bump his car into Officer Bose. The Court further finds that Officer Nissen is not entitled to qualified immunity on this record because a genuine issue of material fact exists as to whether plaintiff's car was stopped or accelerating into Officer Bose at the time Officer Nissen shot plaintiff. The law is clearly established that Officer Nissen's use of deadly force was unconstitutional if, in fact, plaintiff's car was completely stopped at the time he opened fire. *See United States v. Wallace*, 852 F.3d 778, 783 (8th Cir. 2017) ("[F]or a car to qualify as a deadly weapon, the defendant must use it as a deadly weapon and not simply as a mode of transportation."

Plaintiff's focus on what he believes was wrongful conduct by Officer Nissen leading up to the shooting (whether Officer Nissen did or did not see plaintiff drinking, whether Officer Nissen's badge was visible, and whether Officer Nissen announced that he was a law enforcement officer, for example) is misplaced. The Court's analysis must focus on the reasonableness of the seizure itself, that is, the shooting, and not on the

events leading up to it. *Gardner*, 82 F.3d at 252; *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995). As the Eighth Circuit Court of Appeals has explained:

> The Fourth Amendment prohibits unreasonable seizures, not unreasonable or ill-advised conduct in general. Consequently, we scrutinize only the seizure itself, not the events leading to the seizure, for reasonableness under the Fourth Amendment.

*Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir. 1993) (citations omitted). "In analyzing the reasonableness of [an officer's] decision to use deadly force, [courts] examine the information that [the officer] possessed at the time of his decision" to use such force. *Id.*; *see also, e.g.*, *Bella v. Chamberlain*, 24 F.3d 1251, 1256 (10th Cir. 1995) (quoting *Cole* in stating that "'we scrutinize only the seizure itself, not the events leading to the seizure'"); *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992) ("[P]re-seizure conduct is not subject to Fourth Amendment scrutiny."); *Fraire v. City of Arlington*, 957 F.2d 1268, 1275-76 (5th Cir. 1992) (rejecting as irrelevant evidence that police officer manufactured the circumstances which gave rise to the seizure); *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991) ("[T]he officer's liability [is to] be determined exclusively upon an examination and weighing of the information [the officers] possessed immediately prior to and at the very moment [they] fired the fatal shot[s]." (third, fourth, and fifth alterations in original) (emphasis, citation, and internal quotation marks omitted)).

In light of the differing accounts about the circumstances immediately before and at the very moment Officer Nissen fired his weapon, the Court finds there is a genuine issue of fact about whether plaintiff's car was accelerating toward Officer Bose, or was stopped, at the time Officer Nissen opened fire. This fact is material because it affects the outcome of plaintiff's excessive force claim against Officer Nissen. *Anderson*, 477 U.S. at 248. Specifically, whether plaintiff's vehicle was in motion affects whether Officer Nissen reasonably believed Officer Bose was in danger of death or serious injury,

which in turn determines whether Officer Nissen was justified in using deadly force. Thus, this is an issue for a jury to decide and not one that is properly disposed of in a motion for summary judgment.

Thus, the Court **denies** Officer Nissen's Motion for Summary Judgment on Count I of plaintiff's complaint.

### 2. *Officer Frein*

Summary judgment is **granted** as to the excessive force claim against Officer Frein because he did not seize plaintiff. There is no dispute that Officer Nissen seized plaintiff, but Section 1983 liability is personal, and the Court must assess each officer's conduct individually. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017) (citation omitted). A "seizure" occurs only when a citizen is physically touched by law enforcement officers or when he otherwise submits to a show of authority by the officers. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). An assertion of authority by a law enforcement officer without a corresponding submission by the citizen does not constitute a seizure within the meaning of the Fourth Amendment. *Id.* at 626. "[N]either usage nor common-law tradition makes an attempted seizure a seizure." *Id.* at 626 n.2.

In *Cole*, the Eighth Circuit Court of Appeals applied *Hodari D.* in addressing the plaintiff's claim that the officers' unsuccessful measures to stop a fleeing truck by shooting at it were "seizures." 933 F.2d, at 1332. The court stated "these actions constituted assertions of authority by the officers, but they were not seizures under the Fourth Amendment because Cole did not submit to any of them, nor did any succeed in stopping him." *Id.* at 1333. The court held that officers "seize" a person when the officer's show of authority has the effect of stopping the person's movement. *Id.* at 1332-33.

Here, Officer Frein shot at plaintiff's fleeing car. One of three shots struck plaintiff's car, but did not strike plaintiff. Plaintiff did not stop; he kept on driving to the

hospital.  Thus, Officer Frein did not seize plaintiff within the meaning of the Fourth Amendment.  Nor did plaintiff submit to a show of force by Officer Frein; indeed, plaintiff was unaware that Officer Frein was attempting to stop him.  Plaintiff continued driving after Officer Frein shot at plaintiff's car.

Plaintiff's argument that Officer Frein may be liable because a plaintiff need not show more than a de minimis injury (Doc. 84, at 26, citing *Chambers*, 641 F.3d 898 (8th Cir. 2011)), is misplaced.  In *Chambers*, there was no dispute officers seized the plaintiff during an arrest.  641 F.3d at 901-02.  The Court noted, as to the plaintiff's Fourth Amendment excessive force claim, "[t]he appropriate inquiry is whether the force used to effect a particular seizure is reasonable."  *Id.*, at 906 (emphasis, citation, and internal quotation marks omitted).  The question before the Court was whether plaintiff could prove that the officers used excessive force in effecting plaintiff's arrest when the force only resulted in de minimis injury.  Here, plaintiff was not seized as a result of Officer Frein's conduct, so the Court cannot reach the issue of whether the forced used by Officer Frein was unreasonable.  Thus, *Chambers* is not relevant to the issue before the Court.

Thus, the Court **grants** Officer Frein's Motion for Summary Judgment on Count I of plaintiff's complaint.

### B.    *Count II: Section 1983 Claim for Equal Protection Violation*

In Count II of his complaint, plaintiff asserts that Officers Nissen and Frein violated his constitutional rights by "intentionally subjecting him to unlawful treatment on the basis of his race."  (Doc. 2, at 7).  Plaintiff fails to articulate in his complaint, however, precisely what conduct plaintiff alleges the officers engaged in based on his race.  For example, he does not indicate whether he claims that Officer Nissen's attempt to stop him in the first instance was based on plaintiff's race, or whether the officers' decision to shoot at plaintiff was based on plaintiff's race.  Nor, in his complaint, does

plaintiff identify similarly situated individuals of another race who were treated differently than him.

In his brief in resistance to defendants' Motions for Summary Judgment, plaintiff does not directly address his equal protection claim, mentioning it only in relation to whether it is barred by the state court's decision in the criminal proceeding against plaintiff. (*See* Doc. 84). In that regard, plaintiff concedes that the state court's finding that Officer Nissen had reasonable suspicion to approach plaintiff is binding for purposes of issue preclusion, and thus further appears to concede that he is "preclude[ed] from litigating his equal protection claim." (*Id.*, at 42 n.3). The state court also found that Officer Nissen's reasons for approaching plaintiff's vehicle were not pretext for a decision made based on plaintiff's race. (Doc. 70-28, at 5). Although it appears that plaintiff is abandoning his Equal Protection Clause claim, the Court will nevertheless address the claim on its merits.

"[T]he [Equal Protection Clause of the United States] Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). To prevail on this claim, plaintiff must prove that Officers Nissen and Frein exercised their discretion on account of plaintiff's race, which requires proof of both discriminatory effect and discriminatory purpose. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996). "[E]ncounters with officers may violate the Equal Protection Clause when initiated solely based on racial considerations." *United States v. Frazier*, 408 F.3d 1102, 1108 (8th Cir. 2005) (citing *United States v. Woods*, 213 F.3d 1021, 1022-23 (8th Cir. 2000)). When the claim is selective enforcement of the law or a racially-motivated arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested to show the requisite discriminatory effect and purpose. *See Chavez v. Ill. State Police*, 251 F.3d 612, 634–48 (7th Cir. 2001); *Gardenhire v. Schubert*, 205 F.3d 303, 319-20 (6th Cir. 2000).

The Supreme Court has recognized a "class of one" equal protection claim in certain situations, when a plaintiff shows that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000) (per curiam). But the Supreme Court circumscribed this doctrine in *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008), holding that "the class-of-one theory of equal protection has no application in the public employment context," *id.* at 605, because the class-of-one theory was a "poor fit" in a context that involved discretionary decision-making. The Court explained:

> There are some forms of state action, however, which by their nature involve discretionary decision-making based on a vast array of subjective, individualized assessments. In such cases the rule that people should be treated alike, under like circumstances and conditions is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 603 (internal quotation omitted). A police officer's decisions about whom to investigate and how to investigate are matters that necessarily involve discretion. *See United States v. Calva*, 979 F.2d 119, 123 (8th Cir. 1992). Thus, although a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim. *Flowers v. City of Minneapolis*, 558 F.3d 794, 799-800 (8th Cir. 2009).

### 1. Officer Nissen

Officer Nissen is entitled to summary judgment on plaintiff's equal protection claim. Plaintiff has offered no evidence that Officer Nissen does not investigate or stop non-African Americans under similar circumstances. Nor did plaintiff offer direct evidence of racial discrimination or motive by Officer Nissen. At most, plaintiff has

established that Officer Nissen was able to discern plaintiff's race before approaching plaintiff's vehicle; nothing more. Plaintiff has proffered no evidence that Officer Nissen saw other individuals of a different race acting in a manner similar to plaintiff, and that Officer Nissen failed to investigate or stop them. Nor has plaintiff presented evidence showing that Officer Nissen's behavior indicated a "clear pattern, unexplainable on grounds other than race." *Friends of Lake View Sch. Dist. v. Beebe*, 578 F.3d 753, 762 n.12 (8th Cir. 2009) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)). As the non-moving party, plaintiff must "identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford–El v. Britton*, 523 U.S. 574, 600 (1998). Plaintiff has failed to do so and dismissal of this claim is required. *See, e.g.*, *Clark v. Clark*, 926 F.3d 972, 980 (8th Cir. 2019) (affirming grant of summary judgment when the plaintiff proffered insufficient evidence to raise a fact question about whether the officer's conduct was based on the plaintiff's race); *Johnson v. Crooks*, 326 F.3d 995, 1000 (8th Cir. 2003) (affirming grant of summary judgment on an equal protection claim when plaintiff could show nothing more than that the officer was aware when he stopped the plaintiffs that they were of a different race than the officer); *Ford v. Wilson*, 90 F.3d 245, 248-49 (7th Cir. 1996) ("We do not think . . . that the combination of an arbitrary stop . . . with a difference in race between the person stopped and the officer establishes a prima facie case of racial discrimination.").

Thus, the Court **grants** Officer Nissen's Motion for Summary Judgment on Count II of plaintiff's complaint.

### 2. *Officer Frein*

Plaintiff's Equal Protection Clause claim against Officer Frein is even more lacking. Plaintiff proffered no facts that established that Officer Frein was even aware of plaintiff's race. Absent such evidence, there is absolutely no basis for plaintiff to

allege that Officer Frein's conduct violated plaintiff's rights under the Equal Protection Clause.

Thus, the Court **grants** Officer Frein's Motion for Summary Judgment on Count II of plaintiff's complaint.

### C. *Application of the* **Heck** *Doctrine*

Defendants argue that the Court should dismiss plaintiff's Section 1983 claims under the *Heck* Doctrine because otherwise his claims would invalidate plaintiff's convictions for interference with official acts and assault on a peace officer. (Doc. 69-1, at 6-10; Doc. 72, at 6-10). Plaintiff entered Alford pleas to these charges based on conduct arising from this incident.

"A person commits interference with official acts when the person knowingly resists or obstructs anyone known by the person to be a peace officer . . . in the performance of any act which is within the scope of the lawful duty or authority of that officer . . . ." IOWA CODE § 791.1(1)(a). The factual basis for plaintiff's plea to the interference charge was pulling out of the parking space and driving away after being engaged by Officer Nissen.

A person commits an assault on a police officer when the person commits an assault, as defined in Iowa Code Section 708.1, knowing the victim is a police officer. *Id.* at § 708.3A(1)-(4). Under Section 708.1(2),

> [a] person commits an assault when, without justification, the person does any of the following:
>
> a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
>
> b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.
>
> c. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

*Id.* at § 708.1(2). The factual basis for plaintiff's plea to the assault charge was the contact between plaintiff's car and Officer Bose's legs.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court addressed the question of whether a state prisoner could challenge the constitutionality of his conviction in a suit for damages brought under Section 1983. The Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [Section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486-87 (footnote omitted). The Supreme Court has read "necessarily" very narrowly, recognizing that in some cases, although a favorable outcome may ultimately be used to challenge a conviction down the line, a claim is cognizable under Section 1983 when its success would not necessarily affect the validity of the conviction immediately. *See Skinner v. Switzer*, 562 U.S. 521, 534 (2011) (stating that plaintiff's Section 1983 suit for DNA testing of crime scene evidence was not barred by *Heck* because "[s]uccess in [plaintiff's] suit for DNA testing would not 'necessarily imply' the invalidity of his conviction," and that "while test results might prove exculpatory, that outcome is hardly inevitable"); *see also Nelson v. Campbell*, 541 U.S. 637, 647 (2004) (acknowledging that "an inmate could bring a challenge to the lawfulness of a search pursuant to [Section] 1983 in the first instance, even if the search revealed evidence used to convict the inmate at trial, because success on the merits would not 'necessarily imply that the plaintiff's conviction was unlawful'" because exceptions to the exclusionary rule may have applied).

Defendants argue that plaintiff's guilty plea to interference with official acts bars his equal protection claim under the *Heck* doctrine. The Court finds otherwise.

Plaintiff's conviction for failing to obey Officer Nissen's commands to stop does not necessarily negate that Officer Nissen unconstitutionally tried to stop plaintiff based solely on plaintiff's race. Nor does it necessarily negate that Officer Nissen used excessive force on plaintiff when plaintiff failed to stop. Thus, the Court finds that plaintiff's plea to interference with official acts does not bar his Section 1983 claims under the *Heck* doctrine. Regardless, as set forth above, plaintiff's equal protection claim fails for lack of any argument or evidence to support it.

Defendants also argue that plaintiff's plea to assault on a peace officer bars his claims under the *Heck* doctrine. The Court again disagrees. If a plaintiff's Section 1983 claim makes specific allegations inconsistent with the facts upon which the criminal conviction was based, *Heck* will bar a Section 1983 lawsuit alleging excessive use of force. *See, e.g.*, *DeLeon v. City of Corpus Christi*, 488 F.3d. 649, 656-57 (5th Cir. 2007); *Beverly v. Talsma*, No. 3:06-cv-0160-DHF-WGH, 2008 WL 2114886, *3-*5 (S.D. Ind. March 28, 2008). Courts have held that *Heck* can bar an excessive force claim brought by an individual convicted of battery arising out of a physical altercation with a police officer. *See e.g.*, *Connors v. Graves*, 538 F.3d 373 (5th Cir. 2008); *Hudson v. Hughes*, 98 F.3d 868 (5th Cir. 1996); *see also Hainze v. Richards*, 207 F.3d 795, 798-99 (5th Cir. 2000) (an excessive force claim under Section 1983 is barred as a matter of law if brought by an individual convicted of aggravated assault related to the same events). Likewise, some courts have held that a conviction for assault on a police officer bars a Section 1983 claim against the officer for excessive use of force. *See Havens v. Johnson*, 783 F.3d 776, 784-85 (10th Cir. 2015) (finding the *Heck* doctrine barred plaintiff's [Section] 1983 claim against the officer who shot plaintiff because plaintiff's plea required plaintiff to admit that he had the intent to cause the officer serious bodily injury and took a substantial step toward the commission of the assault); *Cunningham v. Gates*, 312 F.3d 1148, 1155 (9th Cir. 2002) (finding the *Heck* doctrine barred plaintiff's

Section 1983 claim against the officer who shot plaintiff when plaintiff shot at the officer while fleeing the scene of an armed robbery). Other courts have found a plea to a battery charge does not necessarily bar an excessive use of force claim. *See, e.g.*, *Garrison v. Porch*, 376 Fed. App'x 274, 278-79 (3rd Cir. 2010) (holding that the plaintiff's guilty plea to simple assault did not *Heck* bar his claim because plaintiff's admission that he committed a simple assault by "act[ing] in a very aggressive and threatening manner" did not justify the amount of force used by the officer effecting the arrest); *McCann v. Neilsen*, 466 F.3d. 619, 622-23 (7th Cir. 2006) (holding that plaintiff's Section 1983 excessive force claim was not *Heck* barred because plaintiff's complaint could be read to admit that plaintiff assaulted the officer, attempted to escape, and resisted arrest, but that plaintiff's conduct did not justify the use of deadly force).

Claims of excessive force may often proceed without calling into question an underlying assault or battery conviction. *See Colbert v. City of Monticello*, 775 F.3d 1006, 1008 (8th Cir. 2014); *Henson v. Brownlee*, 2 Fed. Appx. 635, 637 (8th Cir. 2001). As this Court previously held, a conviction for assault under Iowa Code Section 708.3A(4) does not preclude a Section 1983 claim for excessive use of force by an officer.

> It is clear that a decision in Church's favor would not create two conflicting resolutions arising out of the same incident. Such a result is possible if, even though Church assaulted Anderson, Church suffered unnecessary injuries because Anderson's response to the assault was not objectively reasonable. Application of *Heck*, here, would imply that once a person assaults a law enforcement officer, "he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages." *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006). "This would open the door to undesirable behavior and gut a large share of the protections provided by § 1983." *Id.* Accordingly, I conclude that Church's excessive force claim is not barred by the *Heck* doctrine. *See id.*; *see also Colbert v. [City of] Monticello*, 775 F.3d 1006, 1008 (8th Cir. 2014) (holding that there is no inherent conflict between finding that police officers used excessive force in effectuating arrest, and conviction for resisting arrest and harassment of police officer; state court's determination

that individual resisted lawful arrest may coexist with finding that officers used excessive force to subdue him); *Thore v. Howe*, 466 F.3d 173, 180 (1st Cir. 2006) (recognizing that "[a] § 1983 excessive force claim brought against a police officer that arises out of the officer's use of force during an arrest does not necessarily call into question the validity of an underlying state conviction and so is not barred by *Heck* . . .. Even the fact that [the] defendant was convicted of assault on a police officer does not, under *Heck*, as a matter of law necessarily bar a § 1983 claim of excessive force.").

*Church v. Anderson*, 249 F. Supp. 3d 963, 973 (N.D. Iowa 2017).

Here, plaintiff's plea to a misdemeanor assault on Officer Bose does not necessarily bar his claim that Officer Nissen used excessive force. Plaintiff's guilty plea did not necessarily establish that plaintiff was using deadly force against Officer Bose or was placing Officer Bose in danger of death or serious bodily injury. The factual basis of plaintiff's plea was that the bumper of plaintiff's car made contact with Officer Bose's legs. (Doc 69-4, at 212). The fact that plaintiff bumped Officer Bose's legs does not, standing alone, mean that Officer Nissen has a reasonable belief that Officer Bose was in danger of death of serious bodily injury. The facts of this case are differentiable from *Havens* and *Cunningham* because in those cases the plaintiff's underlying convictions required a finding that the plaintiff's conduct posed a risk of death or serious bodily injury to the officers. *See Havens*, 783 F.3d at 783-84 (holding that plaintiff's claim was *Heck* barred because plaintiff pleaded guilty to a charge requiring the intent to cause serious bodily injury and a substantial step in furtherance of the assault); *Cunningham*, 312 F.3d at 1154-55 ("Cunningham's conviction for felony murder required the jury to find that he intentionally provoked the deadly police response, and that he did not act in self-defense. Any civil claim that Cunningham was not the provocateur necessarily fails as a result of the jury verdict."). The Court finds this case to be undistinguishable from *Church* and finds no reason to reach a contrary conclusion.

Thus, the Court **denies** defendants' Motions for Summary Judgment on the ground that the *Heck* Doctrine bars plaintiff's Section 1983 claims.

### D.    *Application of Res Judicata and Collateral Estoppel Doctrines*

Officer Nissen argues that plaintiff's Section 1983 claims against him are barred by the doctrines of res judicata and collateral estoppel as a result of litigation in plaintiff's state criminal case. (Doc. 69-1, at 10-12). Plaintiff argues that the issues of fact here differ from those litigated and necessarily decided by the state court in plaintiff's criminal case.

This Court previously expounded on the application of issue preclusion in relation to a state criminal case.

> "Issue preclusion, or collateral estoppel, provides that once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Advanced Commc'ns Corp. v. MCI Commc'ns Corp.*, 263 F.3d 793, 795 (8th Cir. 2001) (quoting *Plough v. W. Des Moines Cnty. Sch. Dist.*, 70 F.3d 512, 515 (8th Cir. 1995)) (internal marks omitted). A federal court "look[s] to state law in determining whether to apply issue preclusion." *Continental Holdings, Inc. v. Crown Holdings Inc.*, 672 F.3d 567, 573 (8th Cir. 2012).
>
> > Under Iowa law, issues of fact are given preclusive effect if: (1) the issue of fact concluded is identical to that concluded in the prior action; (2) the issue of fact was raised and litigated in the prior action; (3) the issue of fact was material and relevant to the disposition of the prior action; and (4) the determination made of the issue of fact in the prior action was necessary and essential to the resulting judgment.
>
> *Plough*, 70 F.3d at 516 (footnote omitted). "The rule is well established in Iowa that a validly entered and accepted guilty plea precludes a criminal defendant from relitigating essential elements of the criminal offense in a later civil case arising out of the same transaction or incident." *Dettmann v. Kruckenberg*, 613 N.W.2d 238, 244 (Iowa 2000) (en banc).

*Hood v. Upah*, No. 11-CV-96-LRR, 2012 WL 2906300, at *10 (N.D. Iowa July 16, 2012) (alterations and notations of alterations in original). In other words, issue preclusion occurs when "a court has decided an issue of fact or law necessary to its judgment." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Res judicata is a slightly different doctrine. Although issue preclusion bars parties from relitigating only those issues "that were actually litigated and necessary to the outcome of a prior judgment," *Jefferson Smurfit Corp. v. United States*, 439 F.3d 448, 451 (8th Cir. 2006), the claim preclusion aspect of res judicata "bars claims that were or could have been litigated in the earlier proceeding," *Wedow v. City of Kan. City*, 442 F.3d 661, 669 (8th Cir. 2006); *see also Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."). Res judicata is available only when: "(1) the prior judgment was entered by a court of competent jurisdiction; (2) the decision was a final decision on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." *Morse v. C.I.R.*, 419 F.3d 829, 833-34 (8th Cir. 2005) (quoting *United States v. Brekke*, 97 F.3d 1043, 1047 (8th Cir. 1996)).

Officer Nissen insists that the state judge's decision on plaintiff's motion to suppress[4] definitively determined that plaintiff's car was moving forward and hitting Officer Bose before Officer Nissen opened fire. (Doc. 69-1, at 11). As to the evidence of whether plaintiff interfered with an official act, the state judge found that Officer Nissen had reasonable suspicion to stop plaintiff and that plaintiff knew Officer Nissen was a peace officer when plaintiff drove away from Officer Nissen. (Doc. 70-28, at 4).

---

[4] As part of the same motion plaintiff also moved to dismiss the criminal charges on speedy trial grounds. (Doc. 70-28, at 4). The state court's decision on plaintiff's motion to dismiss is of no import here.

The state judge also found that Officer Nissen's initial stop of plaintiff was not pretextual and was not based on plaintiff's race. (*Id.*, at 5). As noted, these findings have a preclusive effect and bar plaintiff's claim in Count II alleging a violation of the Equal Protection Clause.

The state judge also denied plaintiff's motion to suppress evidence found in his car. In so ruling, the state court made the following findings and conclusions about plaintiff's alleged assault of Officer Bose.

> The next issue raised concerns officer Bose. When the car starts driving away from officer Nissen, the officer yelled "police" and told police to stop the car. Officer Bose stepped in front and raised his hand and stopped the car. The car initially stopped and then moved forward and struck officer Bose at least two to three times on his legs with the car. Officer Bose was in full uniform in a lighted area, and the defendant looked at him and it was obvious he was a police officer. Officer Bose was in fear of being run over and dove to the right, and as he dove, he heard gunshots. Hitting officer Bose with a car would constitute an assault on an officer in the performance of his duties and is an independent ground for later seizure and search of the defendant's car.

> The defense contends that there was not an assault on officer Bose, contending that the defendant was taking defensive action to avoid officer Nissen's deadly, unprovoked force. As stated previously, the court has reviewed all of the videos and exhibits submitted in this case. While they are informative as to the events, they are not conclusive of what transpired. The most competent and compelling evidence was that given by officer Nissen and officer Bose as to what happened at the stop. Officer Nissen fired at the driver as the car started to accelerate and Bose dove out of the way. Officer Nissen fired because he believed Bose had gone under the car and was likely to be hit or drug by the car. The driver's actions in accelerating towards Bose precipitated the use of force by officer Nissen. If the defendant had placed the car in park and not bumped and then started to accelerate, this event would not have occurred.

(*Id.*).  The state judge went on to also hold "the items in the car were in plain view in the hospital parking lot" (*id.*), which would have also provided probable cause to support a search of plaintiff's car.

Plaintiff asserts that the judge's factual findings upon which Officer Nissen relies are not the same issues before the Court and were not necessary to deciding the motion to suppress.  (Doc. 84, at 41-45).  Plaintiff further points out that in accepting plaintiff's plea to the misdemeanor charges, the court did not adopt those factual findings.  (*Id.*, at 40).  The judge expressly stated that he was not adopting "either party's assertions" about the facts when plaintiff entered his guilty plea.  (Doc. 70-20, at 22).

In determining whether there was probable cause to search plaintiff's car and person, the state judge did not need to determine whether plaintiff's car was moving before, at the same time as, or after Officer Nissen opened fire.  It was only necessary for the judge to determine whether plaintiff assaulted a person plaintiff then knew to be a law enforcement officer.  The state judge found that plaintiff bumped into Officer Bose with his car two or three times, which constituted an assault, which in turn justified the search of plaintiff's vehicle.  Whether plaintiff's vehicle was moving at the time of the shots had no bearing on the probable cause finding, and thus, the judge's finding about when Officer Nissen opened fire was dicta.  The judge may very well be correct, and a jury may concur, but that factual finding was not necessary and essential to the resulting judgment.  Thus, because the state court's finding was dicta, it cannot preclude plaintiff's claim here that Officer Nissen used excessive force by shooting plaintiff while plaintiff was at a complete stop.

Nor is plaintiff's claim barred by the res judicata doctrine.  Here, res judicata is inapplicable because the matter litigated in the state criminal prosecution is not the same cause of action being litigated here, nor are the parties or their privities identical.  In the criminal case, the issue litigated was whether there was probable cause to believe that

plaintiff committed an assault of Officer Bose, not whether plaintiff's car was moving at the time he was shot or whether plaintiff posed a significant threat of death or serious physical injury to Officer Bose. *See Harrington v. City of Council Bluffs, Ia.*, 902 F. Supp.2d 1181, 1185 (S.D. Iowa 2012) (finding res judicata did not bar Section 1983 claim when prior proceeding involved post-conviction litigation). Also, in the criminal case plaintiff and the State of Iowa were the parties. Here, plaintiff, Officers Nissen and Frein, and the City are the parties. Officer Nissen and the City offer no authority to indicate that they are in privity with the State of Iowa. Further, for the reasons noted above in relation to issue preclusion, plaintiff's plea to a misdemeanor assault of Officer Bose was not a final finding on the merits of the issue of whether Officer Nissen used excessive force when he shot plaintiff.

Thus, the Court **grants in part** and **denies in part** Officer Nissen and the City's Motion for Summary Judgment on the ground that the res judicata or collateral estoppel doctrines bar plaintiff's Section 1983 claims.

### E.     *Count III: Section 1983 Claim for Failure to Intervene*

In Count III, plaintiff asserts a claim against "unknown" Waterloo police officers whom he claims failed to intervene, in violation of his constitutional rights. The deadline for discovery has passed, and plaintiff has not amended his complaint to identify any such unknown Waterloo Police Officers. Nor has plaintiff moved to dismiss this claim, without prejudice, under Federal Rule of Civil Procedure 41(a)(1). The unnamed officers, who have never been served or otherwise appeared in this case, have not moved for entry of summary judgment on Count III.

A district court has the inherent power to dismiss, sua sponte, a claim for failure to prosecute, *Carlisle v. United States*, 517 U.S. 416, 426 (1996), or to achieve an orderly, expeditious disposition of cases, *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630-31 (1962). Here, discovery is complete and plaintiff has not sought to amend Count

III to identify specific officers. Trial is only a few months away and, under this Order, this case will proceed to trial on claims against Officer Nissen and the City. Under these circumstances, it is appropriate for the Court to dismiss Count III of plaintiff's complaint so that this case may proceed to final disposition in an orderly fashion.

Thus, the Court sua sponte **dismisses with prejudice**, Count III of plaintiff's complaint against unknown Waterloo Police Officers for failure to intervene.

### F.    *Count IV: State Law Battery Claim*

In Count IV of his complaint, plaintiff asserts state law claims of battery against Officers Nissen and Frein.

### 1.    *Officer Nissen*

For the same reasons stated in Section IV(A)(1), the Court finds that there exists a genuine issue of material fact whether Officer Nissen committed a battery on plaintiff. Under Iowa law,

> [a]n actor subject to liability to another for battery if
>
> a. he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
>
> b. an offensive contact with the person of the other directly or indirectly results.

*Nelson v. Winnebago Industries, Inc.*, 619 N.W.2d 385, 388 (Iowa 2000) (quoting RESTATEMENT (SECOND) OF TORTS § 18(1) (1965)). An officer, however, may use any force which the officer "reasonably believes to be necessary to effect the arrest or to defend any person from bodily harm while making the arrest." IOWA CODE § 804.8(1). Iowa law applies the same "objective reasonableness" standard under Section 804.8 as for determining if an officer has used excessive force under the Fourth Amendment. *See Chelf v. Civil Serv. Comm'n*, 515 N.W.2d 353, 355-36 (Iowa App. 1994) (holding that the "reasonableness" inquiry under Iowa Code Section 804.8 is the same objective

standard applied by the United States Supreme Court in *Graham*). Because the Court has found there exists a genuine issue of material fact whether Officer Nissen's conduct was objectively reasonable under the Fourth Amendment, so too must the Court find a genuine issue of material fact exists whether Officer Nissen's conduct was reasonable under Iowa Code Section 804.8.

Thus, the Court **denies** Officer Nissen's Motion for Summary Judgment on Count IV of plaintiff's complaint.

### 2. Officer Frein

In his brief in resistance to defendants' Motions for Summary Judgment, plaintiff concedes that the Court should dismiss his battery claim against Officer Frein "because discovery has revealed that Frein's gunshots did not result in any physical contact with [plaintiff]." (Doc. 84, at 17 n.2). The Court agrees.

Thus, the Court **grants** Officer Frein's Motion for Summary Judgment on Count IV of plaintiff's complaint. This resolves all claims against Officer Frein. Thus, the Clerk of Court is **directed** to enter judgment in Officer Frein's favor and **terminate** Officer Frein as a party to this case.

### G. Claims Against the City

### 1. Section 1983 Claim

As a general matter, municipalities are not subject to respondeat superior or vicarious liability under Section 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). A municipality can be held liable for its own wrongs, however, when the enforcement of a policy or practice of the municipality results in the deprivation of federally protected rights. *Id.* A municipality cannot be held liable under *Monell* unless the plaintiff suffered a constitutional injury at the hands of the municipality's officer. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

The sole basis for the City's Motion for Summary Judgment on plaintiff's *Monell* claims is that Officers Nissen and Frein did not violate plaintiff's constitutional rights, and thus the City's policies, practices, and customs likewise could not have violated plaintiff's rights. (Doc. 69-1, at 16-17). Plaintiff's resistance included several pages of argument and numerous statements of additional fact in support of plaintiff's *Monell* claims against the City. (Docs. 80, at 19-37; 84, at 41-68). The City's reply did not address the merits of plaintiff's *Monell* claims; the City only reiterated its prior argument that it could not be liable because neither Officer Nissen or Officer Frein violated plaintiff's constitutional rights. (Doc. 92, at 5).

As the Court found above, there is a genuine issue of material fact as to whether Officer Nissen violated plaintiff's Fourth Amendment rights when he shot plaintiff, but as a matter of law Officer Nissen did not violate plaintiff's Fourteenth Amendment right to equal protection under the law. The Court also dismissed plaintiff's failure to intervene claim. Thus, the City's Motion for Summary Judgment is **granted** as to plaintiff's *Monell* claims for the alleged equal protection violations, failure to intervene, and for any claim premised on alleged constitutional violations by Officer Frein. The City's Motion for Summary Judgment is **denied** as to the City's *Monell* liability for Officer Nissen's alleged use of excessive force.

The Court cannot grant summary judgment on a ground not raised by the City without giving plaintiff notice and a reasonable time to respond. FED. R. CIV. P. 56(f). "Constructing a party's argument for them is not within a court's purview." *Pharm. Care Mgmt. Ass'n v. Tufte*, 297 F. Supp. 3d 964, 986 (D.N.D. 2017). Although the Court has serious questions about plaintiff's ability to prove its *Monell* claims under either the failure to supervise or failure to train theories, the Court's doubts alone are not sufficient to grant summary judgment given the limited scope of the City's motion. *See Perry v. Kunz*, 878 F.2d 1056, 1062 (8th Cir. 1989) ("A surmise, no matter how

reasonable, that a party is unlikely to prevail upon a trial, is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them." (internal quotation marks omitted) (quoting *Union Transfer Co. v. Riss*, 218 F.2d 553, 554 (8th Cir.1955)).

### a. *Failure to Supervise Basis for Liability*

The Court notes several issues with the evidence provided at the summary judgment stage in support of plaintiff's *Monell* claims. First, in support of plaintiff's claim that the City failed to supervise Officer Nissen, plaintiff asserts that there were seventeen claims of misconduct against Officer Nissen, sixteen of which involved excessive force, and that Officer Nissen was cleared of each complaint. (Doc. 84, at 53-56). The Eighth Circuit Court of Appeals has found municipalities liable under *Monell* when the plaintiff produced evidence of prior misconduct complaints along with evidence showing that the complaints were founded. *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999). Without underlying evidence that the previous complaints were, in fact, the result of misconduct, "the mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force." *Id.*; *see also Groark v. Timek*, 989 F. Supp.2d 378, 395 (D.N.J. 2013) ("[W]hen a party seeks to submit statistical evidence showing the frequency of excessive force complaints and the rate at which the complaints are sustained to support a *Monell* claim under [Section] 1983, he must show why those prior incidents were wrongly decided and how the misconduct in those cases is similar to that involved in the present action" (citations and internal quotation marks omitted)). Plaintiff also asserts that the City settled three excessive force lawsuits against Officer Nissen.

Plaintiff offers essentially[5] no evidence at the summary judgment stage to show anything more than the existence of the complaints and lawsuits against Officer Nissen. For almost all the allegations, the only evidence cited by plaintiff is the existence of the complaint (*see* Doc. 81-22), the City's responses to request for admissions wherein the City admits to some instances of Officer Nissen using force and some instances where the arrestee received medical treatment after the arrest but denies that Officer Nissen used excessive force (Doc. 80-69). Plaintiff also cites to portions of Officer Nissen's deposition transcript when he does not recall the details of various incidents underlying the complaints.

It is axiomatic that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. The fact that Officer Nissen had to use force to effect various arrests, and the fact that he does not recall each specific incident leading to a complaint, does not, without resorting to pure speculation, support the truth of the complaints against him. Similarly, the City's settlement of three claims does not prove that Officer Nissen used excessive force. Even drawing all inferences in plaintiff's favor, plaintiff has not provided any evidence that the settlements included an admission of liability. To the contrary, the documents provided by plaintiff indicate that at least one

---

[5] Plaintiff offers slightly more evidence about two complaints. In support of the June 1, 2014 complaint, plaintiff offers a video that plaintiff asserts shows that Officer Nissen slammed the complainant face first into the concrete with no justification, and plaintiff implies that the complainant was handcuffed at the time. (Doc. 84, at 55). The video shows Officer Nissen taking the complainant to the ground, but the takedown occurred behind a police car. Thus, the video does not show one way or the other whether the complainant was handcuffed, whether his face hit the pavement, or whether the use of force was unjustified. As to the July 6, 2011 incident, plaintiff offers a statement by another officer that Officer Nissen used a leg sweep to take down the complainant. Assuming the other officer's statement is true, without any more information about the arrest the Court cannot determine, without resorting to speculation, that the use of a leg sweep constituted excessive force under the circumstances.

of the settlements denied liability. (*See* Doc. 81-22, at 44 ("Civil Suit settled out of court as No-Fault Settlement.")). Thus, without resorting to speculation, the Court cannot determine that the settlements were the result of misconduct by Officer Nissen rather than out of convenience to avoid the time and expenses of discovery and trial.

Plaintiff also argues that the City was deliberately indifferent to its officers' use of excessive force as reflected by a custom of not investigating or holding officers liable for excessive use of force. (Doc. 84, at 52). Again, there is no evidence in the record to support the accuracy of any of the complaints against Officer Nissen, or any other Waterloo Police Department officer. Plaintiff's attempt to brush aside the unfounded nature of the complaints by asserting that the underlying investigations were inadequate is without factual foundation. Plaintiff asserts that he "will present evidence to the jury from [the Chief of Police], the WPD policymaker, that demonstrates a failure to take meaningful corrective action in the face of those repeated complaints." (Doc. 84, at 60). The record, however, does not support this assertion. Plaintiff relies on a hearsay statement in a newspaper article made more than a year after the incident here, and the Chief's general reliance on the allegedly insufficient Internal Affairs investigation process, but neither show that the Chief was aware that Officer Nissen had a proven pattern of using excessive force.[6] Plaintiff's nit picking of the DCI's investigation and the Internal Affairs investigation of this incident cannot, as a matter of law, support plaintiff's claims. The alleged inadequacies of the DCI and Internal Affairs investigations of this incident occurred after the fact; as a result, those events cannot be the moving force behind the alleged constitutional violation and are irrelevant. *See Mettler*, 165 F.3d at 1205 ("[A]n inadequate investigation into the [incident at issue] could not have caused

---

[6] The Court finds that the record does not support plaintiff's assertion that the Chief of Police thought that "spending time with Nissen, thinking that he would know him that way" was the extent of the police chief's supervision of Officer Nissen. (Doc. 84, at 61).

[officers] to use excessive force. Rather, [plaintiff] would need to show that [defendant] had failed to investigate previous incidents . . . ." (citation omitted)). Plaintiff has failed to do so and the alleged errors in this investigation, if there were any, are not sufficient to fill that gap.

Plaintiff also alleges because only 3.4% of citizen complaints were sustained, the City must have failed to investigate or oversee its officers. (Doc. 84, at 63). Plaintiff provides no context whatsoever for these statistics. Without any indication that other similarly sized departments have significantly higher rates of sustained complaints, the Court cannot infer that the low rate of sustained complaints is due to a lack of oversight or investigation rather than officers rarely using excessive force. *See Thompson v. City of Birmingham*, 5 F. Supp. 3d 1304, 1325 (N.D. Ala. 2014) (granting summary judgment when plaintiff only offered raw statistics about excessive force findings because without "statistical context or expert explanation" the court had no way of knowing if the number of sustained complaints was an "average number for a police force the size of Birmingham's, or whether it is small or excessive"). Thus, plaintiff's statistics, without any further context, are not probative as to the City's *Monell* liability.

### b.    *Failure to Train Basis for Liability*

For his failure to train claim plaintiff must provide evidence that the City "was on notice that its training procedures were inadequate and likely to result in violation of constitutional rights." *Larkin v. St. Louis Hous. Auth. Dev. Corp.*, 355 F.3d 1114, 1117 (8th Cir. 2004) (citation and internal quotation marks omitted). If the City had notice that its training procedures are inadequate and likely to result in violations of constitutional rights, the City's failure to address it amounts to deliberate indifference. *Id*. There are two ways that plaintiff can prove notice. First, plaintiff may show that the failure to train "is so likely to result in a violation of constitutional rights that the need for training is patently obvious." *S.J. v. Kan. City Pub. Sch. Dist.*, 294 F.3d 1025, 1029

(8th Cir. 2002) (citation and internal quotation marks omitted). Second, plaintiff may show notice by providing evidence of "a pattern of misconduct indicat[ing] that the [City's] responses to a regularly recurring situation are insufficient to protect . . . constitutional rights." *P.H. v. Sch. Dist. of Kan. City*, 265 F.3d 653, 660 (8th Cir. 2001). The Supreme Court has stated that, because police officers are armed by a municipality and are certain to be required to use force on occasion, "the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989).

Here, plaintiff argues that the City is liable because it failed to adequately train officers (1) on how to assess risk from vehicles and; (2) how to assess whether a motor vehicle constitutes enough of a threat to justify the use of deadly force. (Doc. 84, at 75-76). The record shows that the City had a policy on the proper use of force and provides its officers with training about the use of force. (Docs. 81-16, at 4-7; 81-20, at 9, 22-27). This type of policy and training is generally sufficient to rebut a failure to train claim. *Otey v. Marshall*, 121 F.3d 1150, 1152-53, 1156 (8th Cir. 1997) (emphasizing the significance of giving the subordinate police officer a policy manual about the use of force; concluding that such evidence proved that the superior had trained the officer on the use force in a manner consistent with the constitution); *see also Andrews v. Fowler*, 98 F.3d 1069, 1076-77 (8th Cir. 1996) (finding that on-the-job training on procedures and policies in addition to requiring police academy training was sufficient to shield the city from liability for an officer's conduct); *Williams-El v. Johnson*, 872 F.2d 224, 230 (8th Cir. 1989) (finding training was adequate against a charge of excessive force and denial of medical care when the city provided on-the-job training and required attendance at the police academy).

Plaintiff cites no authority that any other municipalities provide use-of-force training specifically related to vehicles or any evidence that such training is or should be the norm. Nor has the plaintiff proffered any evidence that the City has experienced a pattern of excessive use of force arising from situations when officers were unable to assess the risk from vehicles or whether vehicle threats justify a use of deadly force.

The fact that a city does not specifically train its officers about shooting through windshields, standing alone, does not constitute a failure to train that subjects the city to *Monell* liability. *Eberhardinger v. City of York*, 341 F. Supp. 3d 420, 430 (M.D. Pa. 2018), *aff'd*, 782 F. App'x 180 (3d Cir. 2019). In *Eberhardinger*, the plaintiff asserted that the defendant city was liable under *Monell* for failing to train its officers to move out of the way of a moving vehicle rather than shooting at it. *Id.* The plaintiff relied on a statement by her expert that "[m]any police departments in the [United States] prohibit shooting at moving vehicles, including windshields[,] and train officers to get out of the way." *Id.* (alterations in original). The plaintiff also relied on a statement by the chief of police that "he did not have specific training or research-based knowledge on shooting at windshields, that such a practice was not specifically prohibited by the City's use-of-force policy, and that he was not aware of other police departments' policies on shooting at windshields." *Id.* The district court granted summary judgment in the city's favor because the plaintiff failed to "put forth sufficient evidence to establish that the City's policy and training regarding shooting at moving vehicles is so obviously deficient as to evince deliberate indifference to the constitutional rights of those who come into contact with the [c]ity's police officers." *Id.* The court specifically noted that the plaintiff failed to offer other departments' policies that prohibited shooting at moving vehicles, research or studies showing that policies that prohibit shooting at moving vehicles are superior, or any statistical evidence showing the frequency with which officers shooting at moving vehicles poses a risk to bystanders or passengers. *Id.*; *see also Woloszyn v. Cty. of*

*Lawrence*, 396 F.3d 314, 325 (3d Cir. 2005) (upholding grant of summary judgment when the alleged training deficiencies identified by plaintiff's expert were "as broad and general as they [were] conclusory").

In short, defendants are not entitled to summary judgment on plaintiff's *Monell* claims related to Officer Nissen's use of force on plaintiff because there is a genuine issue of material fact as to whether Officer Nissen used excessive force. Based on the Court's review of the factual record provided by plaintiff, however, the Court's denial of the City's motion is not a guarantee that plaintiff's remaining *Monell* claims will reach the jury. Absent showing that plaintiff can offer admissible evidence to address the deficiencies noted above, plaintiff's evidence about past complaints against Officer Nissen, the overall sustained rate of complaints, and the lack of specific training regarding shooting at automobiles may be inadmissible under Federal Rules of Evidence 403 and/or 404(b).

### 2. *City Liability on the Battery Claim*

"Under the doctrine of respondeat superior, an employer is liable for the tortious or wrongful conduct of its employee if the conduct occurs in the scope of the employment relationship." *Riggan v. Glass*, 734 N.W.2d 486 (Iowa Ct. App. 2007) (Table) (citing *Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999). Respondeat superior, however, does not apply to Section 1983 claims. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010). Under Iowa law "every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties . . .." IOWA CODE § 670.2. Subject to exceptions not raised here, municipal employers also have a duty to defend, save harmless, and indemnify their employees for claims arising out of acts or omissions in the scope of the employee's employment. *Id.* at § 670.8. These duties specifically extend to Section 1983 claims against municipal employees. *Id.* at § 670.8(2).

Again, the City's only argument is that Officer Nissen and Officer Bose are entitled to summary judgment on plaintiff's claims, and thus there is no underlying claim to support plaintiff's vicarious liability or indemnity claims. (Doc. 69-1, at 20). For the same reasons set forth in the preceding section, the City's motion is **granted** as to any respondeat superior claim or claim for indemnity based on any claim against Officer Frein. The City's motion is also **granted** as to any respondeat superior claim or claim for indemnity based on any allegation that Officer Nissen violated plaintiff's Fourteenth Amendment right to equal protection. Because respondeat superior does not apply to Section 1983 claims the City's motion is **granted** as to plaintiff's respondeat superior claim based on plaintiff's Section 1983 excessive force claim against Officer Nissen. The City's motion is **denied** as to plaintiff's indemnity claim based on excessive force claim against Officer Nissen. The City's motion is also **denied** as to plaintiff's respondeat superior and indemnity claims against the City based on plaintiff's battery claim against Officer Nissen.

## VI. CONCLUSION

For the reasons stated, the Court **grants in part and denies in part** defendants' Motions for Summary Judgment as follows:

The Court **grants** Officer Nissen's Motion for Summary Judgment as to Count II (equal protection claim), but **denies** his motion as to Count I (excessive force claim) and Count IV (battery) claim.

The Court **grants** the City's Motion for Summary Judgment as to Count II (equal protection claim), **grants in part** as to Count I (excessive force claim) to the extent based on Officer Frein's conduct; Count V (respondeat superior) to the extent it is based on Officer Frein's conduct, plaintiff's equal protection claim, or plaintiff's excessive force claim against Officer Nissen, and; Count VI (indemnification) to the extent based on Officer Frein's conduct or plaintiff's equal protection claim. The Count **denies in part**

the City's motion as to Count V (respondeat superior) to the extent it is based on plaintiff's battery claim against Officer Nissen and Count VI (indemnification) to the extent it is premised on either plaintiff's Section 1983 excessive force claim or battery claim against Officer Nissen.

The Court **grants** Officer Frein's Motion for Summary Judgment (Doc. 70) in its entirety and Officer Frein is dismissed as a defendant. The Clerk of Court is **directed** to enter judgment in Officer Frein's favor and **terminate** Officer Frein as a party to this case.

The Court sua sponte **dismisses with prejudice** plaintiff's failure to intervene claim in Count III due to his failure to prosecute that claim.

**IT IS SO ORDERED** this 11th day of December, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa