**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

JOVAN WEBB,

          Plaintiff,

vs.

CITY OF WATERLOO and MARK
NISSEN,
          Defendants.

No. 17-CV-2001-CJW-MAR

**ORDER**

---

**TABLE OF CONTENTS**

I.     DEFENDANTS' MOTION IN LIMINE ................................................ 4

    A.    Expert Testimony of D. Raymond Walton (Defendants' I) ................. 4

    B.    Media Coverage (Defendants' II) ................................................ 7

    C.    Personal Information (Defendants' VI) ......................................... 9

    D.    Violations of Departmental Policies or Guidelines (Defendants' VII) ..... 9

II.    PLAINTIFF'S MOTIONS IN LIMINE ............................................... 10

    A.    Undisclosed Witnesses (Plaintiff's 1) ........................................... 10

    B.    Reference to Counsel as "Out of Town" (Plaintiff's 2) ..................... 11

    C.    Evidence of Plaintiff's Bad Acts (Plaintiff's 3) ............................... 11

    D.    Evidence of Prior Bad Acts, Arrests, and Convictions of Third-Party
          Witnesses (Plaintiff's 4) ......................................................... 12

E.     Expert Testimony of Kenneth Wallentine (Plaintiff's 6).....................12

F.     Unjust Enrichment or Hitting the Lottery (Plaintiff's 7) ...................15

G.     Jurors as Taxpayers (Plaintiff's 8) ...............................................15

H.     Officer Nissen's Inability to Pay (Plaintiff's 9) ..............................15

I.     Adverse Employment Consequences to Officer Nissen (Plaintiff's 10)...17

J.     Officer Nissen's Good Deeds (Plaintiff's 11) .................................18

K.     Information Unknown to Officer Nissen at the Time of the
Shooting (Plaintiff's 12).............................................................18

III.     OPPOSING MOTIONS IN LIMINE ....................................................19

A.     Plaintiff's Guilty Pleas and Convictions (Defendants' I, Plaintiff's 15) ..19

B.     Complaints and Investigations (Defendants' III, Plaintiff's 5 and 16) ....21

1.     Prior Complaints Against Officer Bose ...............................23

2.     Prior Complaints Against Officer Nissen.............................23

a.     To Establish the City's *Monell* Liability.......................23

b.     To Establish Officer Nissen's Knowledge, Opportunity,
Lack of Mistake, or Character. .................................25

3.     Prior Lawsuits Against Officer Nissen................................25

4.     Subsequent Complaints/Investigation of Shooting...................26

C.     Claims Previously Dismissed (Defendants' IV, Plaintiff's 14).............28

D.     Undisclosed Experts (Defendants' V, Plaintiff's 13)……………………28

IV.   CONCLUSION …………………………………………………………………29

This matter is before the Court on defendants' motion in limine (Doc. 106) and plaintiff's motions in limine (Docs. 107, 112). Plaintiff filed separate briefs in support of some sections of his motions in limine. (Docs. 108–110). Plaintiff and defendants timely resisted each other's motions in limine. (Docs. 114, 115). The Court will first address defendants' motion in limine, then plaintiff's motions in limine, and finally the issues on which both parties moved in limine. For the following reasons, the parties' motions in limine are **granted in part**, **denied in part**, and **held in abeyance in part**.

## I.    DEFENDANTS' MOTION IN LIMINE

### A.    Expert Testimony of D. Raymond Walton (Defendants' I)

Plaintiff entered guilty pleas under *North Carolina v. Alford*, 400 U.S. 25, 38 (1970), to two misdemeanor offenses arising from his interactions with the Waterloo Police Department ("WPD") leading up to defendant Officer Mark Nissen ("Officer Nissen") shooting plaintiff. Plaintiff designated attorney D. Raymond Walton ("Walton") as an expert witness. Walton opines, based on his experience, that defendants generally enter *Alford* pleas to lesser charges because of the stress of facing criminal charges and the financial cost of fighting criminal charges through trial. (Doc. 115-1, at 4).

Defendants argue that Walton's testimony is not relevant because plaintiff's reasons for pleading guilty do not affect the preclusive effect of his guilty pleas. (Doc. 106, at 4-6). Defendants also argue that Walton's testimony does not meet the reliability standard for expert testimony adopted in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (*Id.*, at 6-7). Defendants further argue that Walton's testimony is an improper legal conclusion, and that Walton's testimony attempts to undermine the validity of plaintiff's convictions in violation of *Heck v. Humphrey*, 512 U.S. 477 (1994). (*Id.*, at 7-8).

The Court finds that Walton's testimony is irrelevant, and thus inadmissible. As a general matter, "[i]rrelevant evidence is not admissible." FED. R. EVID. 402. "Evidence is relevant if it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." FED. R. EVID. 401. The rules governing expert opinions also include a relevance requirement. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006) ("District courts must ensure that all scientific testimony is both reliable and relevant.") (citing *Daubert*, 509 U.S. at 580; FED. R. CIV. P. 702); *see also* FED. R. CIV. P. 702 (requiring that an expert's opinions "help the trier of fact to understand the evidence or to determine a fact in issue").

Walton's testimony does not meet the general relevance requirement. The legal effects of plaintiff's *Alford* pleas are the same regardless of his motivation for entering the pleas. Thus, the reason that plaintiff accepted the *Alford* pleas does not make any fact of consequence more or less likely.

Also, Walton's testimony does not meet the relevance requirement for expert opinions. In some instances, it may be important for an expert to educate the jury "about general principles, without ever attempting to apply these principles to the specific facts of the case[.]" *Thomas v. FCA US LLC*, 242 F. Supp. 3d 819, 824 (S.D. Iowa 2017) (quoting *United States v. Coutentos*, 651 F.3d 809, 821 (8th Cir. 2011)). Although general principles may provide background for the expert's testimony, ultimately "the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue." *Smith v. Bubak*, 643 F.3d 1137, 1140 (8th Cir. 2011); s*ee also Meridian Mfg., Inc. v. C & B Mfg., Inc.*, 340 F. Supp. 3d 808, 829 (N.D. Iowa 2018) ("An expert may rely on experience-based testimony if the expert also explains . . . how that experience is reliably applied to the facts." (citation and internal quotation marks omitted)). Walton's report explains how his experience led to his conclusions but makes

no attempt to apply his conclusion to the facts here. Thus, Walton's testimony does not meet the relevance requirement for expert testimony under Rule 702.

Separately, Walton's testimony is inadmissible because it does not meet the *Daubert* standard for reliability. Federal Rule of Evidence 702 requires, in part, that an expert's testimony be "the product of reliable principles and methods." FED. R. CIV. P. 702(c). The Supreme Court has provided four non-exclusive factors to assist courts in determining if an expert's opinions are sufficiently reliable:

> (1) whether the scientific technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and/or publication; (3) the known rate of error for the technique or theory and the applicable standards for operation; and (4) whether the technique is generally accepted.

*Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) (citing *Daubert*, 509 U.S. at 593-94). Under this standard, courts must exclude expert testimony that is "excessively speculative or unsupported by sufficient facts." *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 720 (8th Cir. 2012) (citation and internal quotation marks omitted). Similarly, courts can reject "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Here, Walton's opinion is not based on any data. He asserts that "sometimes" he sees signs of the overwhelming stress that facing criminal charges has on his clients, and "sometimes" the clients' family members advise Walton of their concerns about his clients' mental health. (Doc. 115-1, at 4). There is, however, no data tying Walton's observations to the fact that his clients ultimately accepted *Alford* pleas, other than Walton's say-so. Similarly, Walton avers that avoiding the stress of facing criminal charges is "overwhelmingly" the reason why his clients accept *Alford* pleas, but provides

no data or technique that he applied to reach that conclusion. The Court finds that Walton's testimony is inadmissible under the *Daubert* standard. Section I of defendants' motion in limine is **granted** and Walton's testimony is excluded. The Court need not address the remaining arguments defendants raised in their motion in limine.

### B.    *Media Coverage (Defendants' II)*

Defendants move to exclude evidence of media coverage of the shooting giving rise to this case, as well as media coverage of other incidents of WPD officers using force. Defendants argue that media articles are not relevant because any facts in the articles can be presented directly at trial through witnesses, documents, and videos. (Doc. 106, at 8). Defendants also argue that the news articles may include opinions or commentary that would be unfairly prejudicial to defendants. (*Id.*, at 8-9).

Plaintiff agrees that media coverage of the shooting at issue here is not admissible. (Doc. 115, at 9). Plaintiff argues, however, that general media coverage about the WPD is admissible because it is relevant to plaintiff's claim against the City of Waterloo ("City") under *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978). Plaintiff asserts that media coverage of alleged incidents of excessive force is relevant to whether the WPD had notice of the risk that its officers would commit constitutional violations, which in turn is relevant to whether the WPD was deliberately indifferent to that risk in adopting its training and supervision regime. (*Id.*, at 9-10). Specifically, plaintiff seeks to offer a statement by the former chief of the WPD, Daniel Trelka ("Trelka"), that certain uses of force by WPD officers were honest mistakes and not worthy of punishment. (*Id.*, at 11).

As to media coverage of the shooting giving rise to this case, the Court notes that there is no dispute between the parties, so the Court will exclude any such evidence. The Court also finds that media coverage of any other alleged use of excessive force by WPD officers is inadmissible. To establish *Monell* liability, the plaintiff "must demonstrate

that the [City] had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Birkeland ex rel. Birkeland v. Jorgenson*, Civil No. 17-1149 (DWF/LIB), 2019 WL 1936736, at *10 (D. Minn. May 1, 2019) (alteration in original) (quoting *Parrish v. Ball*, 594 F.3d 993, 998 (8th Cir. 2010)).  It follows that a city must have notice *before* the injury giving rise to the claim.  *See id.* (granting summary judgment on plaintiff's *Monell* claim because plaintiff "failed to present evidence indicating the City had reason to believe, *before* the events giving rise to this case, that its training or supervision of the officers was inadequate" (emphasis added)).

Having reviewed plaintiff's exhibit list, it appears the two articles plaintiff intends to offer are an August 16, 2016 article and a September 10, 2016 editorial about alleged uses of excessive force by the WPD.  The events giving rise to this case occurred on April 5, 2015.  (Doc. 2, at 2).  These stories, published after the shooting here, are not probative as to whether Trelka or the City were aware of the alleged uses of excessive force before Officer Nissen shot plaintiff on April 5, 2015.

Plaintiff also argues that Trelka's comments in the September 10, 2016 editorial show the existence of an unofficial custom or policy of allowing officers to commit misconduct without punishment.  (Doc. 115, at 11-12).  The alleged custom or policy, however, must be the cause of the plaintiff's injury.  *Mettler v. Whitledge*, 165 F.3d 1197, 1204-05 (8th Cir. 1999).  The editorial, published a year and a half *after* the shooting, cannot establish that Officer Nissen believed at the time of the shooting that a municipal custom allowed him to violate plaintiff's rights with impunity.  *See id.* at 1205 (holding that an inadequate investigation of the shooting at issue could not have caused the deputy to use excessive force; "Rather, [the plaintiff] would need to show that [the defendant] had failed to investigate previous incidents before a court could conclude the deputies at the time of the shooting believed a municipal custom allowed them to violate [the decedent's] rights with impunity").

Again, looking to the September 10, 2016 editorial, the Court finds that any media accounts present a substantial risk of prejudice to defendants. The editorial is entitled "Send in the feds to restore trust in the Waterloo police," which is highly prejudicial to defendants and is an inadmissible opinion. (Doc. 80-67). Thus, Section II of defendants' motion in limine is **granted**. The parties may not reference the news coverage of the shooting giving rise to this case. The parties also must not reference any news coverage of any alleged excessive force or other misconduct by WPD officers. If plaintiff believes he has established that a news story gave Trelka notice of alleged misconduct before April 5, 2015, plaintiff may request permission of the Court, outside the presence of the jury, to reference any such media accounts.

### C.    *Personal Information (Defendants' VI)*

Defendants move to prevent plaintiff from seeking or commenting on personal information about defendants, such as residential addresses or names of family members. (Doc. 106, at 11-12). Plaintiff does not resist defendants' motion, but requests a broader order preventing both sides from seeking such personal information from any witness at trial. (Doc. 115, at 15). Section VI of defendants' motion in limine, with plaintiff's requested expansion, is **granted**. Neither party may seek or comment on any witness' private personal information that is not relevant to the issues here. If either party believes that opposing counsel is approaching a topic subject to this ruling, counsel may ask to approach the bench so the Court can determine if the information is sufficiently relevant to warrant its disclosure.

### D.    *Violations of Departmental Policies or Guidelines (Defendants' VII)*

Defendants seek to exclude testimony or argument that Officer Nissen or other officers at the scene of the shooting violated WPD policies. (Doc. 106, at 12). Defendants argue that WPD policies are not relevant to the issue of whether defendants

violated plaintiff's constitutional rights.[1]  Plaintiff concedes that an officer's violation of policy is not *per se* a violation of plaintiff's constitutional rights but argues that a violation of policy may be relevant to other aspects of this case.

Neither party has affirmatively identified the policies that Officer Nissen or any other WPD officer allegedly violated.  Without this information, the Court cannot grant the blanket exclusion defendants seek, and thus Section VII of defendants' motion in limine is **denied**.  The Court's ruling, however, does not ensure the admission of evidence that Officer Nissen or some other officer violated WPD policy.  Given the potentially prejudicial nature of plaintiff's allegation, plaintiff may not reference the alleged violations of policy in his opening statement.  Plaintiff must advise the Court outside the presence of the jury before discussing the alleged policy violations so the Court can determine if the policy at issue is relevant to the issues here.

## II.    PLAINTIFF'S MOTIONS IN LIMINE

### A.    Undisclosed Witnesses (Plaintiff's 1)

Plaintiff seeks to preclude defendants from calling any witnesses not previously disclosed in defendants' Federal Rule of Civil Procedure 26 initial disclosures.  (Doc. 107, at 1-2).  Defendants state they do not intend to call any witnesses not included in their disclosures or previously deposed in this case, except for one impeachment witness.  (Doc. 114, at 1).   Defendants argue that they are not required to disclose their impeachment witness.  (*Id.* (citing FED. R. CIV. P. 26(a)(1)(A)(i))).  Defendants request that plaintiff similarly be precluded from calling undisclosed witnesses.

---

[1] Plaintiff also asserts a battery claim against Officer Nissen.  (Doc. 2, at 8-9).  Under Iowa law, the standard for establishing battery by a law enforcement officer is the same as the Fourth Amendment's objective reasonableness standard.  *Chelf v. Civil Serv. Comm'n*, 515 N.W.2d 353, 355-56 (Iowa Ct. App. 1994).  Effectively, all of plaintiff's claims are predicated on defendants' alleged violations of plaintiff's constitutional rights.

Section 1 of plaintiff's motions in limine is **granted** to the extent it is consistent with Rule 26. No party may call a witness it did not properly disclose under Rule 26, but the parties may call undisclosed witnesses that need not be disclosed under Rule 26.[2]

### B.    *Reference to Counsel as "Out of Town" (Plaintiff's 2)*

Plaintiff seeks to bar defendants and their counsel from referring to plaintiff's counsel as being from out-of-town. (Doc. 107, at 2). Plaintiff agrees not to refer to defendants' counsel as "out-of-town." (*Id.*). Defendants do not oppose plaintiff's motion, and request that the motion similarly bar plaintiff from referring to defendants' counsel as "out-of-town." (Doc. 114, at 1). Section 2 of plaintiff's motions in limine is **granted**. Neither party or their counsel may refer to opposing counsel as "out-of-town."

### C.    *Evidence of Plaintiff's Bad Acts (Plaintiff's 3)*

Plaintiff requests that the Court bar defendants from offering evidence of plaintiff's prior bad acts under Federal Rule of Evidence 404. (Docs. 107, at 3; 108). As an example, plaintiff argues that the fact he was arrested for drug possession (but not convicted) in a separate incident after the April 5, 2015 incident is inadmissible under Rule 404(b). (Doc. 108). Defendants argue they are not offering plaintiff's other interactions with law enforcement as evidence of plaintiff's character but rather as potential alternative causes of plaintiff's emotional distress. (Doc. 114, at 2). The record here is too vague for the Court to determine the precise nature of the "bad acts" at issue, so the Court **holds in abeyance** its ruling on Section 3 of plaintiff's motions in limine.

---

[2] After the parties' filed their motions in limine, defendants objected to certain witnesses on plaintiff's witness list. Defendants claim that plaintiff did not identify some of his witnesses in plaintiff's Rule 26 disclosures. Plaintiff filed a brief addressing defendants' objections. (Doc. 122). The Court will issue a separate order ruling on defendants' objections to plaintiff's witness list.

### D. Evidence of Prior Bad Acts, Arrests, and Convictions of Third-Party Witnesses (Plaintiff's 4)

Plaintiff requests the Court bar defendants from presenting evidence of plaintiff's witnesses' prior bad acts, arrests, and criminal convictions because defendants did not disclose such information in discovery. (Doc. 107, at 3-4). Defendants argue they objected to plaintiff's discovery request and plaintiff never moved the Court to rule on the objection. (Doc. 114, at 3). Defendants also assert that the information was equally available to plaintiff because plaintiff could have obtained it from his own witnesses. (*Id.*).

The proper mechanism for plaintiff to challenge defendants' objections was to file a motion to compel under Federal Rule of Civil Procedure 37. *See* FED. R. CIV. P. 33 advisory committee's note to 1970 amendment ("If objections are made, the burden is on the interrogating party to move under Rule 37(a) for a court order compelling answers, in the course of which the court will pass on the objections."); FED. R. CIV. P. 37 advisory committee's note to 1970 amendment ("The changes now made in Rules 33 and 37(a) make it clear that the interrogating party must move to compel answers, and the motion is provided for in Rule 37(a)."). Because a motion to compel is the proper mechanism for addressing discovery objections, it follows that a motion in limine is an improper mechanism for litigating discovery disputes. *Mixed Chicks LLC v. Sally Beauty Supply LLC*, 879 F. Supp. 2d 1093, 1095 (C.D. Cal. 2012) (noting that it is improper to move in limine "[a]s a substitute for motions to compel discovery or for discovery sanctions that should have been brought earlier"). Section 4 of plaintiff's motions in limine is **denied**.

### E. Expert Testimony of Kenneth Wallentine (Plaintiff's 6)

Plaintiff seeks to exclude certain testimony of defendants' expert Kenneth Wallentine ("Wallentine"). (Docs. 107, at 5; 110). Plaintiff argues that Wallentine

makes impermissible credibility determinations about some third-party witnesses and Officer Thomas Frein ("Officer Frein"). (Doc. 110, at 1). Plaintiff also argues that Wallentine offers opinions about Officer Steve Bose's ("Officer Bose") physiology during the incident without the necessary expertise. (*Id.*, at 2). Finally, plaintiff argues that Wallentine offers testimony about the content of certain video evidence despite Wallentine not being in a better position than the jury to interpret the video. (*Id.*).

Defendants argue that Wallentine's alleged credibility determinations are permissible statements about the facts or assumptions underlying Wallentine's testimony. (Doc. 114, at 7-9). Defendants assert that Wallentine's discussion of the video evidence likewise explains the basis of his testimony. (*Id.*, at 9). Finally, defendants argue that Wallentine's testimony that Officer Bose's behavior was consistent with a physiological reaction is a proper expert opinion based on Wallentine's training. (*Id.*, at 9-10).

The Court finds that the challenged portions of Wallentine's testimony are not improper expert opinions. Turning first to the alleged credibility determinations and interpretation of the video, the District Court of Minnesota has noted

> [T]here is a critical distinction between an expert testifying that a disputed fact actually occurred or that one witness is more credible than another and an expert giving an opinion based upon factual assumptions, the validity of which are for the jury to determine. The former is manifestly improper, the latter is not.

*Thomas v. Barze*, 57 F. Supp. 3d 1040, 1059 (D. Minn. 2014) (citation and internal quotation marks omitted). An expert's testimony may be inadmissible when the expert's assumptions are not based in fact, *Tyger Constr. Co. Inc. v. Pensacola Constr. Co.*, 29 F.3d 137, 144 (4th Cir. 1994), but "[a]n expert's opinions are not inadmissible simply because an underlying assumption may be contestable." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 615 (8th Cir. 2011). Disputes over the factual basis of an expert's opinion go to the credibility of the testimony, not its admissibility. *Meridian*

*Mfg., Inc.*, 340 F. Supp. 3d at 850 (citing *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011)).

In the transcript plaintiff provided, Wallentine did not offer an opinion that any witness is more or less credible than others. In fact, Wallentine specifically stated that he was not making a credibility determination. (Doc. 110-1, at 6). Rather, Wallentine considered the conflicting accounts of the shooting, weighed the accounts based on a list of factual considerations, then made assumptions about the facts giving rise to the shooting. (*Id.*). If the jury finds the witnesses that Wallentine discounted are credible, then the jury can disagree with Wallentine's assumptions and accord his opinions little or no weight. Similarly, Wallentine can testify as to what he saw on the surveillance video and how that affected his opinions. If the jury disagrees with Wallentine's interpretation of the video, it is likewise free to disregard Wallentine's testimony. Simply put, plaintiff's arguments go only to the weight, not the admissibility of Wallentine's testimony.

Turning to Wallentine's allegedly improper opinion about Officer Bose's physiology, the Court finds that Wallentine's opinion is admissible. Wallentine admitted that he was "not offering an opinion about Officer Bose's particular physiology." (*Id.*, at 12). Wallentine testified that he has "been trained in various aspects of human performance factors which include the study of physiological reactions to stress and fear responses," and "what [Officer Bose] described in consistent with that which [Wallentine] know[s] to be a common physiological reaction or response to stress inducers." (*Id.*). Because Wallentine's testimony is based on his specialized training, his opinion that Officer Bose's reported perception of the incident is consistent with a physiological reaction is an admissible expert opinion. *See* FED. R. CIV. P. 702. Section 6 of plaintiff's motions in limine is **denied**.

### F.    *Unjust Enrichment or Hitting the Lottery (Plaintiff's 7)*

Plaintiff moves to preclude defendants from suggesting or arguing that plaintiff would be unjustly enriched by an award in plaintiff's favor, or that plaintiff is trying to "hit the lottery." (Doc. 107, at 5).  Defendants do not oppose plaintiff's motion. (Doc. 114, at 10).  Section 7 of plaintiff's motions in limine is **granted**.

### G.    *Jurors as Taxpayers (Plaintiff's 8)*

Plaintiff asks the Court to prevent defendants from "appealing to jurors' interests as taxpayers as it relates to paying a judgment to [p]laintiff." (Doc. 107, at 6). Defendants do not oppose plaintiff's motion. (Doc. 114, at 10).  Section 8 of plaintiff's motions in limine is **granted**.

### H.    *Officer Nissen's Inability to Pay (Plaintiff's 9)*

Plaintiff seeks to prevent Officer Nissen from presenting evidence about his inability to pay a judgment against him. (Doc. 107, at 7-8).  Plaintiff argues that such evidence is inadmissible because plaintiff served Officer Nissen with an interrogatory about his finances, and Officer Nissen declined to answer the request and never supplemented his response. (*Id.*, at 7).  In the alternative, plaintiff asks that the Court instruct the jury that the City of Waterloo may indemnify Officer Nissen for an award of compensatory damages against him. (*Id.*, at 7-8).  Defendants argue that Officer Nissen's financial condition is relevant to the issue of punitive damages. (Doc. 114, at 10). Defendants also argue, as they did in response to Section 4 of plaintiff's motions in limine, that they objected to plaintiff's interrogatory, and plaintiff never moved under Federal Rule of Civil Procedure 37 to have the Court rule on defendants' objection. (*Id.*).

Officer Nissen raised two objections in response to plaintiff's interrogatory about his finances.  First, Officer Nissen asserted a boilerplate objection that plaintiff's interrogatory was "burdensome, overbroad, and has been made for purposes of harassment." (Doc. 107-1, at 4).  Second, Officer Nissen objected to the interrogatory

because his financial condition was not relevant until plaintiff established a prima facie case for punitive damages. (*Id.*, at 4-5).

As to Officer Nissen's first objection, this Court has made its position on vague, boilerplate objections very clear. *See Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 186 (N.D. Iowa 2017) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." (citation and internal quotation marks omitted)); *St. Paul Reins. Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) ("[T]he 'mere statement by a party that the interrogatory [or request for production] was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection.'" (alteration in original) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)). As the Court explained in its ruling on Section 4 of plaintiff's motions in limine, however, it is generally the responsibility of the party serving the interrogatory to petition the Court to rule on an objection. *See* FED. R. CIV. P. 33 advisory committee's note to 1970 amendment; FED. R. CIV. P. 37 advisory committee's note to 1970 amendment. Plaintiff never moved the Court to rule on Officer Nissen's first objection, and this dispute is not properly addressed in a motion in limine.

As to Officer Nissen's second objection, the Court finds that Officer Nissen should have supplemented his interrogatory answer, even without a motion by plaintiff, to remove his objection that plaintiff's interrogatory was premature. Federal Rule of Civil Procedure 26 requires that a party timely supplement its responses to interrogatories "if the party learns that in some material respect the disclosure or response is incomplete or incorrect" or "as ordered by the court." FED. R. CIV. P. 26(e)(1). Rule 26(e) creates an affirmative duty on the responding party to supplement its discovery responses, and the responding party cannot avoid its duty by claiming that the requesting party should have raised the failure to supplement earlier. *Carmody v. Kansas City Bd. of Police Comm'rs*, No. 11-CV-00160-DW, 2012 WL 12896525, at *5 (W.D. Mo. Aug. 27,

2012), *aff'd sub nom. Carmody v. Kan. City Bd. of Police Comm'rs*, 713 F.3d 401 (8th Cir. 2013). Once some of plaintiff's claims, including his claim for punitive damages, survived summary judgment, plaintiff's interrogatory was no longer premature, and Officer Nissen's second objection no longer had any legal basis.

Even if Officer Nissen retracted his second objection, however, his first objection would have stood until it was challenged by plaintiff. It follows, then, that Officer Nissen's failure to respond is not sanctionable under Federal Rule of Civil Procedure 37, and exclusion of evidence of his financial condition is not proper. Thus, Section 9 of plaintiff's motions in limine is **denied**.

The Court recognizes that the purpose of discovery is "to avoid 'trial by ambush.'" *Kleinfeld v. Tiffany Indus., Inc.*, 109 F.R.D. 333, 335 (E.D. Mo. 1985). The Court "possesses inherent power to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 749 (8th Cir. 2018) (alteration in original) (citation and internal quotation marks omitted). To achieve orderly disposition here, the Court **orders** Officer Nissen to provide plaintiff with any documents and a summary of any testimony he intends to offer about his financial condition within seven days of the date of this Order. Officer Nissen's failure to provide this information may result in the exclusion of such evidence.

Turning to plaintiff's request in the alternative, the Court notes that the process for requesting jury instructions is set out in the Court's Trial Management Order. (Doc. 50, at 10-12). Plaintiff did not offer a proposed instruction on the indemnity issue in the parties' proposed jury instructions. Plaintiff's request in the alternative is also **denied**.

## I.     *Adverse Employment Consequences to Officer Nissen (Plaintiff's 10)*

Plaintiff asks the Court to bar defendants from arguing or implying that Officer Nissen will suffer adverse employment consequences if the jury returns a verdict against

Officer Nissen. (Doc. 107, at 8). Defendants do not oppose plaintiff's motion. (Doc. 114, at 11). Section 10 of plaintiff's motions in limine is **granted**.

### J.     *Officer Nissen's Good Deeds (Plaintiff's 11)*

Plaintiff asks the Court to preclude defendants from offering evidence of Officer Nissen's good deeds as evidence of his character, and from arguing or implying that Officer Nissen acted in conformity with that good character at the time of the shooting. (Doc. 107, at 9 (citing FED. R. EVID. 404(a)). Defendants do not oppose plaintiff's motion, but request that they be able to revisit the issue if plaintiff opens the door to such evidence. (Doc. 114, at 11). Section 11 of plaintiff's motions in limine is **granted**. If defendants believe plaintiff has opened the door to evidence of Officer Nissen's good character, defendants may approach the bench and raise the issue outside the presence of the jury.

### K.     *Information Unknown to Officer Nissen at the Time of the Shooting (Plaintiff's 12)*

Plaintiff requests that the Court bar defendants from introducing evidence about plaintiff that Officer Nissen's did not have at the time of the shooting because such information is not relevant to the reasonableness of Officer Nissen's conduct. (Doc. 107, at 10-12). As an example, plaintiff argues that the fact that plaintiff may have had a handgun in his car at the time of the shooting, or that plaintiff may have committed prior bad acts, is irrelevant because Officer Nissen was not aware of those facts at the time of the shooting. (*Id.*, at 11-12). Defendants generally do not oppose plaintiff's motion, but again ask the Court to allow defendants to revisit the issue if plaintiff opens the door to such evidence. (Doc. 114, at 11). Section 12 of plaintiff's motions in limine is **granted**. If defendants believe plaintiff has opened the door to such evidence defendants may approach the bench and raise the issue outside the presence of the jury.

### III.    OPPOSING MOTIONS IN LIMINE

### A.    *Plaintiff's Guilty Pleas and Convictions (Defendants' I, Plaintiff's 15)*

Plaintiff asks the Court to bar any reference to his *Alford* guilty pleas to two misdemeanor charges related to the incident giving rise to this case. (Doc. 107, at 14-16). Plaintiff argues that the misdemeanors he pled guilty to do not carry a punishment of more than one year of imprisonment, and thus the convictions are not admissible to attack plaintiff's credibility. (*Id.*, at 15 (citing FED. R. CIV. P. 609)). Plaintiff then argues that his misdemeanor convictions are not relevant, or any relevance is substantially outweighed by the risk of unfair prejudice. (*Id.*, at 15-16 (citing FED. R. CIV. P. 401-403)). As part of his resistance to the exclusion of Walton's expert testimony, plaintiff also argues that his pleas to two misdemeanors, Assault on persons engaged in certain occupations under Iowa Code Section 708.3A(1), and Interference with official acts under Iowa Code Section 719.1(1)(b), have no preclusive effect here. (Doc. 115, at 2-3).

Defendants resist plaintiff's motion, stating that "[i]t is anticipated that [p]laintiff may attempt to deny that he was engaged in any wrongful or illegal conduct at or near the time of the events at issue in this lawsuit." (Doc. 114, at 12). Defendants argue that the conduct giving rise to the misdemeanor convictions is relevant to the reasonableness of Officer Nissen's conduct. (*Id.*). Also, in defendants' motion to exclude Walton's testimony, defendants argue that plaintiff's guilty pleas preclude him from relitigating the facts underlying the assault and interference convictions. (Doc. 106, at 5-6).

The Court finds that plaintiff's guilty pleas are relevant and admissible. First, plaintiff's guilty pleas have a preclusive effect as to the facts underlying those convictions. Federal courts look to state law to determine whether to apply issue preclusion. *Continental Holdings, Inc. v. Crown Holdings Inc.*, 672 F.3d 567, 573 (8th Cir. 2012). The Iowa Supreme Court has held "a validly entered and accepted guilty plea precludes a criminal defendant from relitigating essential elements of the criminal offense in a later

civil case arising out of the same transaction or incident." *Dettmann v. Kruckenberg*, 613 N.W.2d 238, 244 (Iowa 2000) (en banc). The Iowa Supreme Court has also held that, because the court must find a factual basis, an *Alford* plea is preclusive as to the essential elements of the crime in a subsequent civil case. *Emp'rs Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 24 (Iowa 2012).

Plaintiff's argument that his pleas are not preclusive because the district court "declined to make factual findings" (Doc. 115, at 3), misses the point. Although the court declined to make factual findings, it specifically found factual bases for the pleas:

> [F]or purposes of the court's knowledge and understanding, the factual basis—since it's an *Alford* plea, the factual basis on Count I, the assault[,] would be resulting from and arising from contact of the bumper of [plaintiff]'s vehicle with the legs of Officer Bose. And Count II[,] the interference, since it's an *Alford* plea . . . the interference factual basis would be [plaintiff] pulling out of the parking spot and away after being approached and engaged by [Officer Nissen.]

(Doc. 70-20, at 4-5). As the Court held in its ruling on Officer Nissen's motion for summary judgment, the facts underlying plaintiff's guilty pleas do not preclude plaintiff's claims because the facts do not establish as a matter of law that Officer Nissen's use of force was reasonable. (Doc. 102, at 34-38). Plaintiff's *Alford* guilty pleas, however, are preclusive as to the elements of the charges to which he ultimately pled.

The factual bases for plaintiff's guilty pleas are relevant to his claims here. The primary issue before the jury is whether Officer Nissen's use of force was "objectively reasonable" based on the totality of the circumstances confronting him. *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Cook v. City of Bella Villa*, 582 F.3d 840, 849 (8th Cir. 2009). In light of the elements of Iowa Code Section 719.1(1) and the district court's factual basis for the plea, plaintiff cannot dispute that he drove away from Officer Nissen knowing that Officer Nissen was a peace officer acting within the scope of his lawful duty as an officer. Likewise, under the elements of Iowa Code Section 719.1(1), which

incorporates Iowa Code Section 708.1, and the factual basis found by the court, plaintiff cannot deny that his vehicle made contact with Officer Bose's legs. Although these facts alone do not justify Officer Nissen's use of deadly force, they are relevant to the totality of the circumstances facing Officer Nissen and are thus relevant to whether his use of deadly force was objectively reasonable. Section 15 of plaintiff's motions in limine is **denied**. Plaintiff may, however, testify that his pleas were *Alford* pleas. If plaintiff so testifies, the Court will, at defendants' request, instruct the jury about the nature and legal effects of an *Alford* plea.

### B.    *Complaints and Investigations (Defendants' III, Plaintiff's 5 and 16)*

Defendants move to exclude evidence of prior internal affairs investigations or other complaints against Officer Nissen and Officer Frein. (Doc. 106, at 9-10). Defendants argue that plaintiff will offer the prior complaints and investigations to prove Officer Nissen and Officer Frein's character for using excessive force and argue that the officers acted in conformity with that character here. (*Id.* at 9). Thus, defendants argue that the prior complaints and investigations are inadmissible under Federal Rule of Evidence 404(b)(1). (*Id.*). Defendants also argue that evidence of prior complaints or investigations will create separate mini-trials within this case which would create a danger of unfair prejudice to defendants. (*Id.* at 10). Finally, defendants argue that because the WPD cleared Officer Nissen of each prior complaint, such complaints are not relevant to the City's *Monell* liability. (*Id.*, at 10-11 (citing *Mettler*, 165 F.3d at 1205)).

Plaintiff resists defendants' motion (Doc. 115, at 13), and in response refers to plaintiff's own motion in limine arguing that the Court should admit evidence of other complaints made to the WPD about alleged uses of excessive force by Officer Nissen (Docs. 107, at 4; 109). Plaintiff argues that the prior excessive force complaints against Officer Nissen are relevant to plaintiff's *Monell* claim against the City because the prior complaints, without punishment, show that the City's failure to supervise, investigate, or

discipline Officer Nissen was the moving force behind Officer Nissen's violation of plaintiff's constitutional rights. (Doc. 109, at 7-8). Plaintiff also argues that the prior complaints against Officer Nissen, and the WPD's response to those complaints, is relevant to show Officer Nissen's knowledge, opportunity, and lack of mistake in using excessive force against plaintiff. (*Id.*, at 8-10). Plaintiff then argues that the WPD's inadequate supervision and investigation of Officer Nissen after the incident giving rise to this case is also relevant to whether the WPD had a policy of allowing officers to use excessive force. (*Id.*, at 10-13).

Separately, however, plaintiff moves to bar all references to the Iowa Department of Criminal Investigation's ("DCI") and the WPD's internal affairs' investigations into the shooting at issue here, including the determination that the shooting was justified and the decision not to charge Officer Nissen criminally. (Doc. 112). Plaintiff argues that the investigations and their results are not relevant, and the results of the DCI and internal affairs' investigations are substantially more prejudicial than probative. (*Id.*).[3]

In response to plaintiff's motion, defendants again argue that because the WPD did not sustain the complaints against Officer Nissen, those complaints must have been unfounded, and therefore could not have provided the WPD with notice of Officer Nissen's prior misconduct. (Doc. 114, at 3-4). Defendants reassert their Rule 404 argument from their motion in limine and argue that the relitigation of prior complaints should be excluded under Federal Rule of Evidence 403 because the probative value is substantially outweighed by the risk of unfair prejudice, confusion of the issues, and wasting time. (*Id.*, at 5). Defendants also argue that evidence of the investigation of the shooting in this case, or any other subsequent investigations, are irrelevant because they

---

[3] Plaintiff also refers to, but does not offer argument about, public statements by Trelka about prior uses of force by WPD officers. (Doc. 109, at 2). For the same reasons the Court articulated in granting Section II of defendants' motion in limine, Trelka's subsequent public statements are not admissible.

could not have been the moving force behind Officer Nissen's conduct. Defendants agree not to offer evidence of the internal affairs and DCI investigations into the incident giving rise to this case unless plaintiff opens the door to such information.

The Court will address the various types of complaint and investigation separately, and, when appropriate, differentiate such evidence by the purpose for which it is offered.

### 1. *Prior Complaints Against Officer Bose*

Defendants moved to exclude evidence of prior complaints against Officer Bose. Officer Bose is only mentioned in one of the seventeen complaints that plaintiff refers to in his brief (Doc. 109, at 4), and plaintiff offers no specific argument that complaints against Officer Bose should be admitted. Given that Officer Bose is not a party to this case, the Court finds that any complaints against Officer Bose are not relevant. Thus, Section III of defendants' motion in limine is **granted in part** as to complaints against Officer Bose.

### 2. *Prior Complaints Against Officer Nissen*

#### a. *To Establish the City's* **Monell** *Liability*

The Court must allow plaintiff to present evidence of prior excessive force claims against Officer Nissen, and the City's response to such complaints, to establish the City's *Monell* liability. As part of plaintiff's claim, he must establish that the WPD had a "policy or custom" of allowing officers to use excessive force, and that the policy or custom was the driving force behind the excessive force here. *See Mettler*, 165 F.3d at 1204. A plaintiff can establish the policy or custom by showing that the municipality or its officers ignored police misconduct. *Id.* at 1205. Evidence that the department received complaints, standing alone, is insufficient to show a policy or custom of failing to investigate or punish officers. *Id.* (citing *Rogers v. City of Little Rock*, 152 F.3d 790, 799 (8th Cir. 1998)). The plaintiff must present evidence that the underlying complaints had merit to establish that the municipality had a practice of ignoring complaints or failing

to discipline officers. *Id.*; *see also Rogers*, 152 F.3d at 799 (holding that in addition to the existence of prior sexual misconduct complaints, "[t]here must also be some showing that the complaints had merit"); *McGuire v. Cooper*, 8:16CV4, 2018 WL 3935053, at *3 (D. Neb. Aug. 16, 2018) ("The instances of sexual misconduct that were either not investigated or a failure to have appropriate responses to such behaviors seem relevant to the response by the Sheriff.").

Plaintiff may present evidence that the excessive force complaints against Officer Nissen had merit. Once plaintiff has made such a showing, plaintiff may offer evidence of the WPD's investigation of the complaints and the outcome of the investigation for purposes of establishing the WPD's *Monell* liability.

Defendants' argument that the WPD's decisions to not sustain the complaints means that the complaints could not provide notice to the City misses the point of *Monell* liability. By defendants' logic, if a municipality always refused to investigate or sustain complaints against its officers, the municipality could indefinitely avoid *Monell* liability by claiming it had no idea its officers were violating citizens' constitutional rights. As indicated by *Mettler* and the cases cited therein, proof that the underlying complaints had merit, coupled with the municipality's failure to investigate or punish the officer, is precisely how a plaintiff must prove that the municipality had knowledge of, and was indifferent to or tacitly authorized, the constitutional violations. 165 F.3d at 1204-05. Given the direct relevance of the merits of the complaints against Officer Nissen to plaintiff's *Monell* claims, the probative value of such evidence is not substantially outweighed by any of the Rule 403 factors. Section 5 of plaintiff's motions in limine is **granted in part** and Section III of defendants' motion in limine is **denied in part** as to evidence of the complaints against Officer Nissen for purposes of establishing the City's *Monell* liability.

### b.    To Establish Officer Nissen's Knowledge, Opportunity, Lack of Mistake, or Character

The prior complaints against Officer Nissen are not relevant to plaintiff's claims against Officer Nissen.  Whether Officer Nissen violated plaintiff's Fourth Amendment right to be free from an unreasonable seizure is an objective determination, and thus his subjective beliefs or motivations are irrelevant.  *See Graham*, 490 U.S. at 397-98.  Iowa courts employ the same objective reasonableness test to battery claims against law enforcement officers.  *Chelf*, 515 N.W.2d at 355-56.  Thus, Officer Nissen's subjective knowledge, opportunity, and lack of mistake are likewise irrelevant.  Also, under Federal Rule of Evidence 404 plaintiff cannot use prior incidents of excessive force by Officer Nissen to establish that Officer Nissen had a character for using excessive force and that he acted in accordance with that character in shooting plaintiff.  Thus, Section III of defendants' motion in limine is **granted in part** and Section 5 of plaintiff's motions in limine is **denied in part**.  Plaintiff cannot offer the prior use of force complaints or the investigation or lack of punishment from those complaints for any purpose against Officer Nissen.

### 3.    Prior Lawsuits Against Officer Nissen

Plaintiff briefly mentions offering evidence of prior lawsuits against Officer Nissen and the settlement of those suits.  (Doc. 109, at 2).  One of the complaints against Officer Nissen also involved a lawsuit, and plaintiff identified one alleged use of force by Officer Nissen that resulted in a lawsuit but no complaint.  (*Id.*, at 4).  Defendants argue that evidence of the lawsuits and settlements is not relevant because the settlements do not include an admission of liability and offering the settlements as evidence undermines the purposes of settlement.  (Doc. 114, at 5).  The Court noted, in its summary judgment ruling, that settlements of lawsuits against Officer Nissen were not relevant absent an admission of liability.  (Doc. 102, at 42-43).  There is a well-recognized "public policy

favoring the compromise and settlement of disputes." FED. R. EVID. 408 advisory committee notes to 1972 proposed rules; *see also* FED. R. CIV. P. 68 (generally excluding evidence of unaccepted offers of judgment).

The Court finds that evidence of the lawsuits against Officer Nissen, and the settlements of those suits, is irrelevant and inadmissible. In the absence of any evidence that Officer Nissen admitted liability, the lawsuits or their settlements are irrelevant to the merits of the underlying use of force. Allowing plaintiff to offer evidence of the settlements would undermine the public policy in favor of the compromise and settlement of disputes by disincentivizing municipalities from ever settling claims for fear that the settlements would later be used against them. Also, to the extent plaintiff's *Monell* claim is based on the WPD's policy of failing to investigate *complaints*, the existence of lawsuits and settlements is irrelevant. Plaintiff may refer to the June 1, 2014 incident and the related complaint but may not offer evidence of the lawsuit or settlement. Plaintiff may not offer evidence about the 2013 incident involving Officer Nissen's allegedly unreasonable use of a taser. (*See* Doc. 104, at 4). Section III of defendants' motion in limine is **granted in part** and Section 5 of plaintiff's motions in limine is **denied in part** as to evidence of lawsuits and settlements involving Officer Nissen.

### 4.    *Subsequent Complaints/Investigation of Shooting*

It is not clear what complaints against Officer Nissen after the April 5, 2015 incident plaintiff intends to offer. The list of complaints in plaintiff's brief does not include any incidents after April 5, 2015. (Doc. 109, at 3-4). Plaintiff argues that the WPD's response to Officer Nissen shooting plaintiff, and its response to unspecified "later incidents" are relevant to show the WPD's policy or practice at the time of the shooting. (*Id.* at 10-13). Even excluding Officer Nissen's alleged use of force in 2013 which did not result in a complaint to the WPD, plaintiff has identified sixteen other incidents he intends to offer as evidence of the WPD's deliberate indifference or tacit

authorization of unconstitutional conduct. (*Id.*, at 3-4). The Court finds that evidence of subsequent uses of force, and the WPD's investigations thereof, are less relevant to proving the existence of a pattern or practice on April 5, 2015, and that the probative value of such incidents is substantially outweighed by the potential for confusion of the issues and waste of time. Section III of defendants' motion in limine is **granted in part** and Section 5 of plaintiff's motions in limine is **denied in part** as to any subsequent complaints against Officer Nissen and the investigation of any such complaints.

Turning to the investigation of the incident giving rise to this case, plaintiff's position is unclear. On one hand, plaintiff indicates that he intends to offer evidence of the investigation of this shooting to show the WPD's policy at the time of the shooting. (*Id.*, at 10-12). On the other hand, plaintiff seeks to bar all evidence of investigations and prosecution decisions related to the incident. (Doc. 112).

The Court cannot allow plaintiff to offer evidence of how this incident was investigated while simultaneously excluding the results of that investigation. The Federal Rules of Evidence caution against the risk of "misleading impression[s] created by taking matters out of context." FED. R. EVID. 106, advisory committee's note to 1972 proposed rules. Presenting evidence of the alleged inadequacies of the investigation without providing the result of the investigation invites the jury to speculate and risks unfair prejudice to defendants.

Even if plaintiff intended to offer a complete picture of the investigation of this incident, the Court finds such evidence irrelevant as to the City's *Monell* liability. As the Eighth Circuit Court of Appeals has pointed out, *Monell* claims require that the municipal custom cause the constitutional violation, and the investigation, or lack thereof, of the incident in question cannot be causally related to that incident. *Mettler*, 165 F.3d 1205. Thus, Section 16 of plaintiff's motions in limine is **granted**, and Section III of defendants' motion in limine is **granted in part**. The parties may not present any

evidence or argument about the investigation of this incident, the charging decisions related to this incident, or any alleged deficiency of said investigations or charging decisions. The Court understands that certain evidence created as part of the investigation, such as witness interviews or expert reports, may be offered for purposes other than to challenge the sufficiency of the investigation, such as impeachment of witnesses. The Court's ruling does not preclude the parties from offering documents created as part of the investigation for other purposes.

### C. *Claims Previously Dismissed (Defendants' IV, Plaintiff's 14)*

Both plaintiff and defendants moved to exclude reference to the claims that the Court dismissed. (Docs. 107, at 13-14; 106, at 11). The Court agrees that such evidence is not relevant at trial. Section IV of defendants' motion in limine and Section 14 of plaintiff's motions in limine are **granted**.

### D. *Undisclosed Experts (Defendants' V, Plaintiff's 13)*

Plaintiff moved to prevent defendants from calling any undisclosed expert witnesses. (Doc. 107, at 12-13). Defendants did not oppose that portion of plaintiff's motions in limine and requested that the Court also prevent plaintiff from calling any undisclosed expert witnesses. (Doc. 114, at 11).

Defendants noted that plaintiff identified medical providers as experts, but never provided a Federal Rule of Civil Procedure 26(a)(2)(B) report from any of the providers. (Doc. 106, at 11). Defendants also attached a copy of plaintiff's Rule 26(a)(2)(A) and (C) disclosure, which lists certain treatment providers and states that each provider will testify in a manner consistent with the medical records plaintiff produced to defendant. (Doc. 106-3). Defendants seek to preclude plaintiff's medical providers from offering testimony outside the content of their records. (Doc. 106, at 11).

Plaintiff responds by stating that he intends to call properly identified treating doctors and mental health professionals to testify as to their treatment of plaintiff's

physical and mental injuries. (Doc. 114, at 14-15). Plaintiff does not specify whether he intends to elicit testimony that is outside the doctors' records but is related to the doctors' treatment of plaintiff. (*Id.*). The parties have not submitted the medical records referenced in plaintiff's Rule 26(a)(2)(C) disclosure.

As a general matter, the Court **grants** Section 13 of plaintiff's motions in limine. The parties may not call any expert witness who was not properly identified under Rule 26(a)(2). The Court **holds in abeyance** its ruling on Section V of defendants' motion in limine. The Court cannot rule in limine to exclude testimony outside of plaintiff's treatment records when the Court does not know the content of the records. Defendants may object as necessary to the extent defendants believe plaintiff is seeking to elicit opinions outside the scope of plaintiff's Rule 26(a)(2)(C) disclosure.

## IV.    CONCLUSION

For these reasons, the parties' motions in limine (Docs. 106, 107, 112) are **granted in part, denied in part**, and **held in abeyance in part**.

**IT IS SO ORDERED** this 10th day of March, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa